Tom Steenson    OSB #74313
E-mail: *gillian@sstcr.com*
Michael Rose    OSB #75322
E-mail: *mrose@sstcr.com*
STEENSON, SCHUMANN,
TEWKSBURY, CREIGHTON
& ROSE, P.C.
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon 97204
Phone:   (503) 221-1792
Fax:      (503) 223-1516

Zan Tewksbury   OSB #91165
E-mail: *zan@sstcr.com*
Beth Creighton   OSB #97244
E-mail: *beth@sstcr.com*

Of Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

JAMES P. CHASSE, JR.; JAMES P. CHASSÉ; LINDA
GERBER; and MARK CHASSE, individually and in his
capacity as Personal Representative of the ESTATE OF
JAMES P. CHASSE, JR.;

          Plaintiffs,

    vs.

CHRISTOPHER HUMPHREYS; KYLE NICE; CITY
OF PORTLAND; CITY OF PORTLAND JOHN DOE
FIREFIGHTERS/PARAMEDICS; PORTLAND
POLICE BUREAU and OTHER PORTLAND JOHN
and JANE DOE OFFICIALS; BRET BURTON;
MULTNOMAH COUNTY; MULTNOMAH COUNTY
JOHN and JANE DOE DEPUTY SHERIFFS and
MEDICAL PERSONNEL; MULTNOMAH COUNTY
JOHN and JANE DOE SHERIFF'S OFFICE and
OTHER OFFICIALS; TRI-COUNTY
METROPOLITAN TRANSPORTATION DISTRICT
OF OREGON; and AMERICAN MEDICAL
RESPONSE NORTHWEST, INC.,

          Defendants.

Case No.

COMPLAINT
(Claims for Damages, Including
Civil Rights Violations and
Wrongful Death)

DEMAND FOR A JURY TRIAL

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

**Table of Contents**                                          **Page**

I      INTRODUCTION                                              3

II     JURISDICTION                                              8

III    PARTIES                                                   8

IV     FACTS                                                     11

   A.   Events Near NW 13th and Everett St. (approx. 5:18 – 5:45 p.m.)   11

   B.   Events Driving to the Jail (approx. 5:46 - 6:05 p.m.)   14

   C.   Events in the Jail (approx. 6:06 - 6:19 p.m.)           15

   D.   Events While Taking Chasse out of the Jail (approx. 6:20 - 6:22 p.m.)   17

   E.   Driving to Portland Adventist Hospital (approx. 6:23 - 6:29 p.m.)   18

   F.   At Providence Medical Center                            19

   G.   The Policies, Practices, and Acts of Portland, Multnomah County,
        Their Respective Officials, and TriMet, Which at Least in Part
        Caused Chasse's Inhumane and Tortured Death              19

   H.   Additional Facts                                        24

V      FIRST CLAIM FOR RELIEF (Unreasonable Stop/Detention/Arrest/Force)   25

VI     SECOND CLAIM FOR RELIEF (Deliberate Indifference to Medical Needs)   26

VII    THIRD CLAIM FOR RELIEF (Unreasonable Treatment/Punishment)   28

VIII   FOURTH CLAIM FOR RELIEF (Conduct that Shocks the Conscience)   29

IX     FIFTH CLAIM FOR RELIEF (Deprivation of Equal Protection)   30

X      SIXTH CLAIM FOR RELIEF (Acting Together to Deprive of Equal Protection)   32

XI     SEVENTH CLAIM FOR RELIEF (Discrimination Based Upon Disability)   33

XII    EIGHTH CLAIM FOR RELIEF (Intentional Infliction of Emotional Distress)   34

XIII   NINTH CLAIM FOR RELIEF (Wrongful Death)                  34

XIV    TENTH CLAIM FOR RELIEF (Injunctive Relief)              35

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

**I**

## INTRODUCTION

1.     On the afternoon of September 17, 2006, a Sunday, 42-year old James P. Chasse, Jr. ("Chasse"), was walking in the Northwest Portland neighborhood where he lived. Chasse was carrying a backpack containing, several vintage books, comics, and a sandwich. He was a gentle and a kind man who was in good physical health and enjoyed a peaceful life.

2.     Chasse's life was brought to a tragic end early that evening. Chasse had not used drugs or alcohol and had committed no crime. No one had complained about his behavior. Nevertheless, Portland Police Officer Christopher Humphreys with the assistance of Portland Police Sergeant Kyle Nice and Multnomah County Deputy Sheriff Bret Burton tackled Chasse, smashed him face first to the concrete sidewalk, and brutally assaulted him with the assistance of. Chasse was terrified and injured after being driven face first into the concrete by the three large officers whom he had never seen before. In response, he struggled in an attempt to avoid having his arms violently wrenched behind his back. Over the ensuing few minutes, and again without cause or provocation, Chasse was repeatedly and viciously punched, struck, kicked, kneed in the head, back, ribs, and chest by Humphreys, Nice, and Burton. He was also repeatedly tasered by Burton.

3.     As a result of that use of extreme, excessive, brutal, and deadly physical force, Chasse suffered massive physical injuries and trauma, including, but not necessarily limited to:

a.     Multiple contusions and abrasions around his eyes, mouth, jaw and nose. A large contusion on the back of his head. Contusions over his chest, back, abdomen and right hip. Internal hemorrhaging of the posterior left and right chest wall.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.   97204
Tel:  (503)  221-1792

b.      Multiple fractures of his ribs, with associated hemorrhaging.  These included fractures to 11 of 12 ribs in his posterior left chest wall.  These fractures were often multiple and comminuted.

c.      Perforation and penetration of his left lung posteriorly by the comminuted posterior rib fractures.  Contusion and hemorrhaging into the soft tissue of his left and right lung and chest wall.

d.      Multiple fractures of his distal left clavicle (shoulder).

e.      The fractures to his ribs and left shoulder caused intense pain.  The injuries to his ribs and the penetration of his left lung significantly decreased his ability to breathe, causing hypoxia, anxiety, fear and panic.  Ultimately, these injuries led to cessation of breathing, respiratory arrest, seizure, and, finally, cardiac arrest.

4.      After assaulting Chasse, and realizing there were many civilian witnesses to the events,  Humphreys, Nice, and Burton, with the aid of other Portland police officers, engaged in a deliberate cover-up of their brutal assault of Chasse.  Specifically: Humphreys publicly announced for paramedics and civilian witnesses to hear that he had found "cocaine" belonging to Chasse, when in fact he knew what he had found and bagged as evidence was bread crumbs; another police officer lied and falsely told civilian witnesses that Chasse had 14 "cocaine" convictions; Humphreys, Nice, and Burton failed to disclose to the paramedics and other medical personnel that they had brutally assaulted Chasse; and Humphreys and other officers lied and told the public that Chasse was a "transient" and was using or "on drugs."

5.      Following their use of deadly force, and over the course of the next hour until he died, Defendants Humphreys, Nice, Burton and other defendants, including Portland

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

firefighters/paramedics, and other Multnomah County deputy sheriffs and medical personnel, failed to provide any help whatsoever to this dying man, which ultimately resulted in him going into respiratory arrest, cardiac arrest, and then dying.

6. As described in ¶¶ 54-70, below, certain policies and well-established official practices of the City of Portland, its Police Bureau, Multnomah County, the Multnomah County Sheriff's Office, and various Portland and county officials also contributed, in part, to Chasse's death.

7. This civil rights action is brought by the plaintiffs, who are Chasse's father (James P. Chassé), mother (Linda Gerber), brother (Mark Chasse), and his estate. Plaintiffs seek damages arising out of the tragic and brutal death of Chasse which was caused by defendants. Plaintiffs also may seek necessary injunctive relief to enjoin and prevent the City of Portland, Multnomah County, and their employees and officials, from continuing to allow and cause egregious violations of the constitutional rights of and the wrongful deaths of innocent citizens.

8. First Claim – Pursuant to 42 USC § 1983, plaintiffs allege that Defendants Humphreys, Nice, Portland John and Jane Doe officials, City of Portland, and Burton, violated the rights of James P. Chasse, Jr., protected by the Fourth Amendment to the United States Constitution, when stopped, detained, and arrested him, and when they used or allowed the use of extreme, excessive, brutal, and deadly physical force which caused his inhumane and tortured death.

9. Second Claim – Pursuant to 42 USC § 1983, plaintiffs allege that Defendants Humphreys, Nice, Portland John Doe firefighters/paramedics, Burton, Multnomah County John and Jane Doe deputy sheriffs, and medical personnel, and officials, and Multnomah County,

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

violated the Fourth Amendment, when they were deliberately indifferent to, or allowed or directed others to be, deliberately indifferent to, James P. Chasse, Jr.'s serious medical needs which caused his inhumane and tortured death.

10.     Third Claim – Pursuant to 42 USC § 1983, plaintiffs allege that Defendants Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, and Multnomah County, violated the Fourteenth Amendment, when they were deliberately indifferent to, or allowed or directed others to be, deliberately indifferent to, James P. Chasse, Jr.'s serious medical needs, treated him unreasonably, and inflicted punishment on him, all of which caused his inhumane and tortured death.

11.     Fourth Claim – Pursuant to 42 USC § 1983, plaintiffs allege that the conduct of Defendants Humphreys, Nice, Portland John Doe firefighters/paramedics and officials, City of Portland, Burton, and Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, and Multnomah County, which caused the inhumane and tortured death of Plaintiff James P. Chasse, Jr., was unreasonable and/or so arbitrary that it shocks the conscience and violated the Fourteenth Amendment to the United States Constitution.

12.     Fifth Claim – Pursuant to 42 USC § 1983, plaintiffs allege that the conduct of Defendants Humphreys, Nice, City of Portland John firefighters/paramedics and officials, City of Portland, Burton, Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, and Multnomah County, denied James P. Chasse, Jr., the equal protection of the laws by discriminating or causing the discrimination against him on the basis that he was mentally ill and thereby caused his inhumane and tortured death, in violation of the Fourteenth Amendment.

13.     Sixth Claim – Pursuant to 42 USC §1985(3), plaintiffs allege that Defendants

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

Humphreys, Nice, Burton, and others acted together to deprive James P. Chasse, Jr., of his Fourteenth Amendment equal protection rights because of his known or suspected mental illness, which actions were a cause of his injuries, pain, suffering, and his inhumane and tortured death. Additionally, pursuant to 42 USC § 1986, one or more of those three defendants neglected or refused to prevent the deprivation of James P. Chasse's rights as described herein.

14.     Seventh Claim – Pursuant to Title II of the Americans with Disabilities Act ("ADA") (42 USC §§ 12131-12165), Section 504 of the 1973 Rehabilitation Act ("Rehab Act"), ORS 659A.142, and Portland City Ordinance 23.01.070, plaintiffs allege that Defendants City of Portland and Multnomah County deprived Plaintiff James P. Chasse, Jr., of his right to the equal opportunity to participate fully in the public accommodations offered to citizens of the City of Portland, the State of Oregon, and of the United States of America and failed to reasonably accommodate his disability. In addition, Defendants City of Portland and Multnomah County failed to evaluate and modify their services, policies and practices in order to comply with the ADA and the Rehab Act.

15.     Eighth Claim – Pursuant to ORS 30.020 and ORS 30.275, plaintiffs allege that Defendants City of Portland and Multnomah County subjected Plaintiff James P. Chasse, Jr., to the intentional infliction of severe emotional distress.

16.     Ninth Claim – Pursuant to ORS 30.020 and ORS 30.275, plaintiffs allege that the negligence of Defendants City of Portland, Multnomah County, Tri-County Metropolitan Transportation District of Oregon, and American Medical Response Northwest, Inc., caused the inhumane, tortured and wrongful death of Plaintiff James P. Chasse, Jr.

17.     Tenth Claim – Pursuant to 42 USC § 1983, plaintiffs may seek necessary

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

injunctive relief to enjoin and prevent the City of Portland, Multnomah County, and their employees and officials, from continuing to allow and cause egregious violations of the constitutional rights of and the wrongful deaths of innocent citizens.

18.    Plaintiffs seek awards of economic damages, non-economic damages, attorney fees, and litigation expenses/costs against all defendants, as appropriate. Plaintiffs also seek an award of punitive damages against Defendants Humphreys, Nice, City of Portland John and Jane Due officials, Burton, and Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, under federal law.

## II

## JURISDICTION

19.    This court has jurisdiction over plaintiffs' claims by virtue of 28 USC §§ 1331, 1343, and 1367, and 42 USC §§ 12133 and 12188.

## III

## PARTIES

20.    Plaintiff James P. Chasse, Jr. ("Chasse") is deceased. At the time of his death, Chasse was 42 years old and had been living with a diagnosis of mental illness for more than 25 years.

21.    Plaintiff James P. Chassé is Chasse's surviving father.

22.    Plaintiff Linda Gerber is Chasse's surviving mother.

23.    Mark Chasse is Chasse's surviving brother. He is the duly appointed Personal Representative of the Estate of James P. Chasse, Jr.

24.    At all material times herein, Defendant Christopher Humphreys ("Humphreys")

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

and Defendant Kyle Nice ("Nice") were Portland Police Officers acting within the course and scope of their employment with the City of Portland ("Portland"). They are sued in their individual capacities only.

25.    Portland is a public body responsible under state law for the acts and omissions of its employees and officials, including those whose conduct is at issue herein.

26.    At all material times herein, the Portland John and Jane Doe defendants were Portland Fire Bureau firefighters/paramedics, Portland Police Bureau officials, and other Portland officials (including those who are elected), acting within the course and scope of their employment with Portland. They are sued in their individual capacities. The Portland John and Jane Doe officials are also sued in their official capacities.

27.    At all material times herein, Defendant Bret Burton ("Burton") was a Multnomah County deputy sheriff acting within the course and scope of his employment with Multnomah County. He is sued in his individual capacity only.

28.    Defendant Multnomah County is a public body responsible under state law for the acts and omissions of its employees and officials, including those whose conduct is at issue herein.

29.    At all material times herein, the Multnomah County John and Jane Doe defendants were deputy sheriffs, medical personnel, Sheriff's Office officials, and other county officials (including those who are elected). All such defendants were employees acting within the course and scope of their employment with Multnomah County. They are sued in their individual capacities. The Multnomah County John and Jane Doe officials are also sued in their official capacities.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

30. The Tri-County Metropolitan Transportation District of Oregon ("TriMet") is a public body responsible under state law for the acts and omissions of its employees and other individuals selected and assigned to its Transit Police Division, including those whose conduct is at issue herein. TriMet has entered into intergovernmental agreements with Portland, the County, and other jurisdictions, to have police officers and deputy sheriffs, such as Humphreys and Burton, selected and assigned to work with the TriMet Transit Police Division ("Transit Police Division") and to provide transit police services. Portland, Multnomah County, other jurisdictions with police departments, and TriMet, work together and jointly decide which police officers and deputy sheriffs shall be selected and assigned to the Division. Supervision of police personnel for the daily operations of the Transit Police Division is provided by the division's command personnel.

31. At all material times herein, Humphreys and Burton had been selected and assigned, respectively, by Portland, Multnomah County, and TriMet to the Transit Police Division. In that capacity, they were agents of TriMet.

32. Defendant AMR Northwest is a subsidiary of American Medical Response, Inc. AMR Northwest is registered in and doing business in Oregon. At all times material herein, AMR Northwest has been a medical transportation company, engaged in the business of providing exclusive emergency ambulance and advanced life support services for Multnomah County through a contract with the County to provide those public services.

33. As discovery in this civil rights action reveals, plaintiffs will seek in an Amended Complaint to add the true names of any John and Jane Doe defendants who may be determined to have caused constitutional violations.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

IV

FACTS

34.     At all times material herein, defendants acted under color of state law.

A.     **Events Near NW 13th and Everett St. (approx. 5:18 - 5:45 p.m.)**

35.     On the afternoon of September 17, 2006, a Sunday, 42-year old Chasse was

walking in the Northwest Portland neighborhood where he lived.  Chasse was carrying a

backpack containing several vintage books, comics, and a sandwich.  Chasse had not used drugs

or alcohol and had committed no crime.  No one had complained about his behavior.

Nevertheless,

36.     Nevertheless, without cause or provocation, near the corner of NW 13th Avenue

and NW Everett Street and at approximately 5:18 p.m., Chasse was tackled, smashed to the

concrete sidewalk, and brutally assaulted by Humphreys with the assistance of Nice and Burton.

Chasse was terrified and injured after being smashed face first to the concrete sidewalk by the

three large officers whom he had never seen before.  In response, he struggled in an attempt to

avoid having his arms violently wrenched behind his back for handcuffing.  Thereafter and again

without cause or provocation, Chasse was repeatedly and viciously punched, struck, kicked, and

kneed in the head, back, ribs, and chest by Humphreys, Nice, and Burton.  He was also

repeatedly tasered by Burton.  No later than 5:22 p.m., those defendants had handcuffed Chasse

behind his back and tied his hands to his feet which were also tied together with a hobble,

thereby hogtying him.

37.     As a result of the above described conduct by those defendants, Chasse suffered

massive physical injuries and trauma, including, but not necessarily limited to:

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,     PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

a.     Multiple contusions and abrasions around his eyes, mouth, jaw and nose. A large contusion on the back of his head. Contusions over his chest, back, abdomen and right hip. Internal hemorrhaging of the posterior left and right chest wall.

b.     Multiple fractures of his ribs, with associated hemorrhaging. These included fractures to 11 of 12 ribs in his posterior left chest wall. These fractures were often multiple and comminuted.

c.     Perforation and penetration of his left lung posteriorly by the comminuted posterior rib fractures. Contusion and hemorrhaging into the soft tissue of his left and right lung and chest wall.

d.     Multiple fractures of his distal left clavicle (shoulder).

e.     The fractures to his ribs and left shoulder caused intense pain. The injuries to his ribs and the penetration of his left lung significantly decreased his ability to breathe, causing hypoxia, anxiety, fear and panic. Ultimately, these injuries led to cessation of breathing, respiratory arrest, seizure, and, finally, cardiac arrest.

38.     Shortly after being assaulted and hogtied, Chasse stopped breathing and lost consciousness. Nice made a Code-3 request for medical assistance at approximately 5:23 p.m. By approximately 5:26 p.m., AMR Northwest paramedics and the John Doe Portland firefighters/paramedics had arrived. Chasse had regained consciousness but was moaning in pain. After the arrival of the medical personnel, Humphreys, Nice, and Burton were deliberately indifferent and/or negligent with regard to Chasse's serious medical needs and engaged in a deliberate cover-up of their assault of Chasse, in one or more of the following ways:

a.     By failing to disclose to the paramedics from AMR Northwest and the John Doe

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Portland firefighters/paramedics that they had brutally assaulted and smashed Chasse to the concrete and had repeatedly and viciously punched, struck, kicked, and kneed him in the head, back, ribs and chest, and tasered him;

b.      By Humphreys publicly announcing for paramedics and civilian witnesses and paramedics to hear that he had found "cocaine" belonging to Chasse when Humphreys knew what he had found and bagged as evidence was bread crumbs;

c.      By publicly misrepresenting that Chasse was involved with drugs and was under the influence of drugs;

d.      By conspiring with other police officers to further denigrate Chasse in the eyes of civilian witnesses and the paramedics, by having another police officer who came on the scene tell witnesses that Chasse had 14 prior "cocaine" convictions, when that officer knew that information was a lie and that Chasse had no drug convictions;

e.      By falsely arresting and charging Chasse with crimes to cover up the unlawful and unconstitutional stop and use of extreme, excessive, brutal, and deadly physical force to prevent trained medical personnel from discovering and treating his injuries.

39.     The AMR paramedics were negligent with regard to Chasse's serious medical needs, in one or more of the following ways:

a.      By failing to take an adequate and complete history of the nature and cause of Chasse's injuries;

b.      By failing to determine the cause and mechanism of his injuries, including his cessation of breathing and unconsciousness;

c.      By failing to perform a complete and thorough physical exam;

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

d.    By failing to thoroughly assess Chasse's respiratory status;

e.    By failing to take adequate and accurate vital signs;

f.    By failing to treat Chasse's respiratory problem with supplemental oxygen;

g.    By failing to determine the cause and to treat the condition causing blood to drain from Chasse's mouth; and

h.    By failing to turn over the care of Chasse to a person of higher medical skill.

40.    The John Doe Portland firefighters/paramedics were also negligent and deliberately indifferent to Chasse's serious medical needs as described in ¶ 39 above.

41.    Instead of transporting or allowing the transport of Chasse to a hospital, Humphreys and Burton arrested and transported Chasse to the Multnomah County Detention Center ("jail") and falsely charged him with crimes to cover up their unlawful and unconstitutional stop of Chasse and their use of extreme, excessive, brutal, brutal, and deadly physical force against him.

**B.    Events Driving to the Jail (approx. 5:46 - 6:05 p.m.)**

42.    Humphreys, Burton, and other Portland police officers carried Chasse hogtied, face down to a police cruiser, despite the injuries to his ribs, shoulder and profuse bleeding from his mouth. While being carried, Chasse screamed, moaned, and struggled because he was in intense pain due to his rib injuries, punctured lung, and fractured clavicle and could not breathe because of these injuries, was hypoxic, and feared for his life. As he screamed and moaned in pain, a Portland firefighter/paramedic made mocking moans and cries, suggesting that Chasse was faking his injuries.

43.    En route to the jail, Humphreys continued his coverup of what had been done to

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Chasse by listing him as a "transient" in his police report, despite having his actual street address from Chasse's Oregon identification card, which was in Humphreys' possession.

44.     After arriving at the jail, in a further attempt to cover up the severity of Chasse's critical injuries Humphreys and Burton covered Chasse's head and face, which was bloody, with a gauze "spit sock." The "spit sock" further complicated Chasse's breathing because the blood flowing from his mouth congealed on the sock, around his mouth and nose, and it prevented others from assessing his level of consciousness.

**C.    Events in the Jail (approx. 6:06 - 6:19 p.m.)**

45.     At approximately 6:06 p.m., Chasse was carried into a separation cell by Humphreys, Burton, and some of the Multnomah County John Doe deputy sheriff defendants. While being carried, Chasse screamed, moaned, cried out, and struggled because he was in intense pain from the multiple rib fractures and fractured shoulder, was hypoxic, and feared he would suffocate to death. After being placed on the floor in the separation cell, the handcuffs and straps around his feet were removed from Chasse. Chasse was left on the floor of the cell, with the bloody "spit sock" still on his head covering his face. While lying on the floor, Chasse:

    a.     Moaned and cried out for help;

    b.     Stopped breathing and lapsed into unconsciousness;

    c.     Suffered repeated seizures; and

    d.     Continued to bleed from his mouth into the gauze "spit sock" covering his face.

46.     The events described in ¶ 45, above, were observed by Humphreys, Burton, and various jail personnel, including ones medically trained. Nevertheless, no one entered Chasse's cell or otherwise tried to help Chasse or attend to his medical needs. No one called 911 or

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,   PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

summoned paramedics.

47.    Humphreys and Burton engaged in a deliberate cover-up of their assault of Chasse and were deliberately indifferent and/or negligent with regard to his critical injuries and serious medical needs, in one or more of the following ways:

a.    By failing to disclose they had brutally assaulted and smashed Chasse to the ground and had repeatedly and viciously punched, struck, kicked, kneed, and tasered him;

b.    By failing to disclose to employees at the jail, including medical personnel, that Chasse had stopped breathing and became unconscious after the assault;

c.    By misrepresenting that Chasse was involved with drugs or was under the influence of drugs;

d.    By covering Chasse's head and face with a "spit sock" to conceal his facial and head injuries and that he continued to bleed from his mouth;

e.    By failing to remove the blood-covered gauze "spit sock" from his head when he stopped breathing and went into convulsions;

f.    By ignoring Chasse's moans and cries of intense pain;

g.    By not calling 911 and summoning paramedics after he had stopped breathing and gone into convulsions; and

h.    By continuing to ask jail officials to accept Chasse after he had stopped breathing and had gone into convulsions, thus delaying Chasse's is transport to a hospital.

48.    The Multnomah County John and Jane Doe deputy sheriffs and medical personnel who were present at the jail showed deliberate indifference and further contributed to the worsening of Chasse's condition and, ultimately, his tortured death by:

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

a.     By failing to enter the cell and help Chasse when he stopped breathing, and then went into convulsions;

b.     By failing to remove the blood-covered gauze "spit sock" from his head and face when they knew or should have known that the "spit sock" would make Chasse's breathing even more difficult and would conceal his level of consciousness;

c.     By not providing any emergency medical assistance;

d.     By ignoring Chasse's moans and cries of intense pain; and

e.     By not immediately calling 911 and summoning paramedics to treat these life threatening conditions and transport Chasse to a hospital after he had again stopped breathing and begun convulsing.

49.    Because of Chasse's serious medical needs, the Multnomah County John and Jane Doe deputy sheriffs and medical personnel who were present at the jail refused to allow Chasse to remain at the jail.  They also refused to provide him with emergency medical treatment.  At least in part, the decision not to provide him with emergency medical treatment was caused by Multnomah County's policy of refusing to provide individuals with emergency medical treatment when the individual is unconscious or, in the judgment of the county's medical personnel, medically unacceptable.

**D.     Events While Taking Chasse out of the Jail (approx. 6:20 - 6:22 p.m.)**

50.    Having been rejected by the jail personnel because of Chasse's serious medical condition, Humphreys and Burton reapplied, or caused the reapplication of, the handcuffs and the hobble to Chasse, and carried him out of the jail to a police vehicle for transport to a hospital. Chasse was carried by Burton and some of the John Doe deputy sheriffs to the police cruiser

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

handcuffed behind his back, with his feet tied together, face down, and still with the "spit sock" on, even though they knew or should have known that being carried like that would further aggravate his rib and lung injuries and worsen his respiratory problems which were life threatening. While being carried out of the jail, Chasse continued to moan, cry out, and struggle because he was in intense pain, was hypoxic, panicky, and was suffocating to death.

**E.    Driving to Portland Adventist Hospital (approx. 6:23 - 6:29 p.m.)**

51.    After leaving the jail at approximately 6:23 p.m, Humphreys and Burton showed deliberate indifference and further contributed to the worsening of Chasse's condition and, ultimately, his tortured death by:

a.    By proceeding to take the critically injured Chasse with life threatening, respiratory injuries to a distant hospital (Portland Adventist) with no increased speed, lights, or siren (Code 1);

b.    By transporting Chasse alone in the back of the police cruiser with a blood-covered gauze "spit sock" over his head and face, when they knew or should have known they could not monitor his level of consciousness this way and that it would make breathing even more difficult for Chasse; and

c.    When, at approximately 6:29 p.m., they finally noticed that Chasse had stopped breathing again in the back of the police cruiser, they took an exit ramp off the freeway, stopped, and then summoned paramedics, by failing to disclose information to the paramedics that he had stopped breathing on two prior occasions, gone into convulsions and had been kicked, punched and kneed in his chest and ribs. Chasse did not regain consciousness. Attempts to resuscitate him at the scene were unsuccessful.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

**F.     At Providence Medical Center**

52.     Paramedics transported Chasse to the Providence Medical Center, where he was pronounced dead at 7:04 p.m.

53.     Humphreys and Burton failed to tell the Emergency Room physician and staff at Providence Medical Center how Chasse was injured and the course of his treatment.

**G.     The Policies, Practices, and Acts of Portland, Multnomah County, Their Respective Officials, and TriMet Which at Least in Part Caused Chasse's Inhumane and Tortured Death**

54.     Portland and its John and Jane Doe officials described in ¶ 26, above ("Portland's officials"), have never disciplined a Portland police officer who acting in the line of duty has caused the death of an innocent citizen through the use of deadly force or who has otherwise caused an in-custody death. As such, that well-established refusal to discipline constitutes an official practice of Portland and its police bureau to support, condone, and ratify the unlawful and unconstitutional use of deadly force or other force that results in death.

55.     As of September 17, 2006, Portland and Portland's officials knew or had reason to know that Humphreys had a history of and propensity for:

a.     Using extreme, excessive, and brutal physical force against innocent citizens, including force which is deadly or potentially deadly;

b.     Violating the constitutional rights of innocent citizens;

c.     Covering up or attempting to cover up his and others' unlawful and unconstitutional conduct by falsifying his police reports and providing other false information related to his conduct.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,     PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

56.    During the time Humphreys had Chasse in custody, and thereafter, Humphreys falsified his police report and provided other false information to try and cover up his unlawful and unconstitutional conduct which caused Chasse's tortured death.  Portland and Portland's officials know or should know about that conduct of Humphreys and nonetheless have not disciplined or terminated Humphreys.

57.    Portland and Portland's officials failed and refused to protect Chasse and other innocent citizens from unlawful and unconstitutional conduct by Humphreys by not taking necessary and appropriate steps to protect Chasse and other innocent citizens from being subjected to such conduct, and thereby supporting, condoning, and ratifying Humphreys' conduct, as described in ¶¶ 55 and 56, above.  At the very least, Portland and Portland's officials knew or should have known that such necessary and appropriate steps at the very least would have included:

    a.    timely and appropriate training;

    b.    timely and appropriate discipline;

    c.    timely and appropriate termination;

    d.    the implementation and operation of an effective early warning system to identify, monitor, and take necessary and appropriate steps to prevent certain Portland police officers from repeatedly engaging in or allowing unlawful and unconstitutional conduct, including that which causes the wrongful death of innocent citizens;

    e.    the implementation and operation of a thorough, independent, and effective review system to investigate deaths of citizens caused by the police use of physical and all in-custody deaths.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

58.    As described in ¶¶ 54, 55, and 57, above, the inaction and deliberate indifference by Portland and Portland's officials in the face of the known dangerous risks posed by Humphreys, Nice, and other Portland police officers constituted an official practice of Portland.

59.    Portland and Portland's officials have not disciplined or terminated Humphreys and Nice since September 17, 2006, thereby supporting, condoning, and ratifying the extreme, excessive, brutal and deadly physical force used by them to kill Chasse.  At least in part, that ratification makes Portland and Portland's officials liable for Chasse's death.

60.    As a result of the conduct described in ¶¶ 54, 55, 57, and 58, above, Humphreys and Nice knew or had reason to know that they could, with impunity, use extreme, excessive, brutal and deadly physical force and otherwise act unlawfully and violate the constitutional rights of innocent citizens.

61.    Prior to September 17, 2006, Portland, Portland's officials, Multnomah County, and Multnomah County's John and Jane Doe officials, described in ¶ 29 above ("Multnomah County officials"), knew of the critical importance of providing adequate and necessary crisis intervention or other such training to its law enforcement personnel to enable them to appropriately interact with, recognize, accommodate, and reasonably treat innocent citizens, including those living with mental illness or otherwise deemed by defendants to be "less desirable" citizens, so as to provide an appropriate non-physical or limited, non-deadly, physical response.  Nonetheless, Portland, Multnomah County, and their respective officials, did not provide such training and thereby were deliberately indifferent and/or negligent with regard to the well-established risk that its law enforcement personnel would unreasonably escalate situations and cause serious physical injury and death to innocent citizens.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

62.    By September 17, 2006, Humphreys, Nice, and Burton did not have the necessary training described in ¶ 61, above.

63.    As of September 17, 2006, Portland and Portland's officials had an unwritten, if not written, policy or well-established official practice of aggressively seeking to remove what they deemed "undesirable" innocent citizens, including those living with or otherwise deemed by defendants to be "less desirable" citizens, from the Portland's downtown, including the neighborhood where Chasse lived. At least in part, that unwritten, if not written, policy or well-established official practice of "cleaning up the streets" was deliberately indifferent to the rights of innocent citizens, including those living with mental illness or otherwise viewed as "undesirable" by defendants because of their appearances or behaviors.

64.    Knowing or having reason to know what they did about Humphreys' propensity to use extreme, excessive, and brutal physical force against innocent citizens, Portland, Portland's officials, and TriMet, were deliberately indifferent and/or negligent with regard to the well-established constitutional rights of Chasse and other innocent citizens, when Humphreys was selected and assigned by Portland and TriMet to the Transit Police Division to provide transit police service.

65.    Portland and the Portland Police Bureau have a written policy which allows, encourages, and directs Portland police officers to use deadly force by taking innocent citizens to the ground during foot pursuits, even though the officers do not have reasonable suspicion or probable cause to believe that someone poses an immediate risk of death or serious bodily injury to some other person.

66.    The tackling and smashing of Chasse to the ground was an impact strike that

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

constituted deadly force. The punching, striking, kicking, and kneeing of Chasse to Chasse's head, chest, ribs, and back were impact strikes that also constituted deadly force.

67.    Portland and the Portland Police Bureau have a written policy which does not include as deadly force the use of hands and feet to make or cause impact strikes to the head and other vital areas such as the chest and back. As a result, Portland police officers are allowed, encouraged, and directed to use hands and feet to make impact strikes to a person's head and other vital areas such as the chest or back, even though the officers do not have reasonable suspicion or probable cause to believe that someone poses an immediate risk of death or serious bodily injury to some other person.

68.    Portland and the Portland Police Bureau have a written policy which allows, encourages, and directs its police officers to use deadly physical force when their police officers have *only* reasonable suspicion, as opposed to probable cause, to believe that someone poses an immediate risk of death or serious bodily injury to some other person.

69.    As of September 17, 2006, Multnomah County and the Multnomah County Sheriff's Office had written policies or well-established official practices which were deliberately indifferent and/or negligent with regard to the critical injuries and serious medical needs of those innocent citizens brought into its jails. As one example, the Sheriff's Office had a written policy of refusing to formally admit an individual to one of its jails when the individual is unconscious and/or otherwise, in the judgment of the County's medical personnel, medically unacceptable. Specifically, such policies and practices allowed, encouraged, and directed its deputy sheriffs and medical personnel to deny necessary and appropriate emergency medical treatment to innocent citizens even though they were critically injured.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,     PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

70.    At least in part, one or more of the policies, official practices, and acts of Portland, Multnomah County, TriMet, and their respective officials, described in ¶¶ 54-69 above, was a cause of Chasse's death.

**H.    Additional Facts**

71.    As described herein, Chasse's treatment and resulting death was so unreasonable and so arbitrary that it shocks the conscience.

72.    As a result of the above conduct by defendants, Chasse suffered and endured severe emotional distress and conscious, severe physical and mental pain and suffering, before he died.

73.    As a result of the above conduct by defendants, Chasse's estate has incurred funeral expenses and other out-of-pocket losses resulting from Chasse's critical injuries and wrongful death.

74.    As a result of the above conduct by defendants, Chasse's parents, as the heirs of their son's estate, have suffered a loss of Chasse's services and the loss of his society and companionship.

75.    Defendants acted with a conscious disregard for Chasse's right to life.  In addition, or in the alternative, defendants' conduct was wanton, reckless, and in disregard of plaintiffs' well-established constitutional rights.

76.    As a result of the above conduct by defendants which was so unreasonable and so arbitrary that it shocks the conscience, James P. Chassé, Linda Gerber, and Mark Chasse, have suffered and continue to suffer stress, anxiety, mental trauma, pain and suffering.

77.    The filing and service of the Complaint herein will provide the public body

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

defendants with timely written notice of all state law claims herein and will satisfy the notice

requirements of the Oregon Tort Claims Act. This Complaint should also provide Portland,

Multnomah, and TriMet, with timely notice of all state law claims which may be added in any

amended complaint herein.

## V

### FIRST CLAIM FOR RELIEF

#### (Section 1983 – Fourth Amendment Violations –

#### Unlawful Stop, Detention and Arrest /

#### Extreme, Excessive, Brutal, and Deadly Physical Force)

78.    As applicable, plaintiffs incorporate the above.

79.    As described above, in violation of the Fourth Amendment to the United States

Constitution, Defendants Humphreys, Nice, and Burton:

a.    Had no lawful or constitutional basis for any stop, detention or arrest of Chasse

since Humphreys, Nice and Burton did not have any reasonable suspicion or probable cause to

believe Chasse had committed or was committing a crime.

b.    Had no lawful or constitutional basis for the use of any physical force to stop,

detain or arrest Chasse.

c.    Had no lawful or constitutional basis for the use of any deadly, or potentially

deadly, physical force to stop, detain or arrest Chasse.

d.    Had no lawful or constitutional basis to subject Chasse to extreme, excessive,

brutal, and brutal, deadly physical force resulting in his wrongful and tortured death.

80.    As described above and at least in part, one or more of Defendants Portland's and

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Portland John and Jane Doe officials' policies, their well-established official practices, and their acts, described above, caused, or otherwise makes them liable for, the violation of Chasse's right not to be subjected to violations of his rights under the Fourth Amendment to the United States Constitution.

81.     As a result of the above, Chasse's estate is entitled to an award of economic and non-economic damages against Defendants Humphreys, Nice, Portland, Portland John and Jane Doe officials, and Burton, in amounts to be determined at trial.

82.     As a result of the above, Chasse's estate is entitled to an award of punitive damages against Humphreys, Nice, Portland John and Jane Doe officials, and Burton, in amounts to be determined at trial.

83.     Pursuant to 42 USC § 1988, Chasse's estate should be awarded its attorney fees and litigation expenses/costs against the defendants named in this claim pursuant to 42 USC § 1988.

## VI

## SECOND CLAIM FOR RELIEF

### (Section 1983 – Fourth Amendment Violation –

### Deliberate Indifference to Critical Injuries and Serious Medical Needs)

84.     As applicable, plaintiffs incorporate the above.

85.     As described above, Defendants Humphreys, Nice, Portland John Doe firefighters/paramedics, Burton, Multnomah County John and Jane Doe deputy sheriffs and medical personnel, were deliberately indifferent to or caused the deliberate indifference to Chasse's critical injuries and serious medical needs, in violation of the Fourth Amendment to the

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

United States Constitution.

86.     As described above and at least in part, one or more of Multnomah County's Multnomah County officials' policies or their well-established official practices were a cause of the deliberate indifference to Chasse's critical injuries and serious medical needs and, ultimately, a cause of his death, in violation of the Fourth Amendment to the United States Constitution.

87.     As a result of the above, Chasse's estate is entitled to an award of economic and non-economic damages against Defendants Humphreys, Nice,  Portland John Doe firefighters/paramedics, Burton, Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, in amounts to be determined at trial.

88.     As a result of the above, Chasse's estate is entitled to an award of punitive damages against Defendants Humphreys, Nice, Portland John Doe firefighters/paramedics, Burton, Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, in amounts to be determined at trial.

89.     Pursuant to 42 USC § 1988, Chasse's estate should be awarded its attorney fees and litigation expenses/costs against  Defendants Humphreys, Nice,  Portland John Doe firefighters/paramedics, Burton, and Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials.

//

//

//

//

//

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

# VII

## THIRD CLAIM FOR RELIEF

### (Section 1983 – Fourteenth Amendment Violation –

### Deliberate Indifference to Medical Needs of Pretrial Detainee/ Unreasonable

### Treatment/Punishment of Pretrial Detainee)

90.     As applicable, plaintiffs incorporate the above.

91.     As described above, the Multnomah County John and Jane Doe deputy sheriffs and medical personnel at the jail were deliberately indifferent to Chasse's critical injuries and serious medical needs and caused of his tortured death, in violation of the Fourteenth Amendment to the United States Constitution.

92.     As described above, the conduct of the Multnomah County John and Jane Doe deputy sheriffs and medical personnel at the jail inflicted punishment on Chasse in violation of the Fourteenth Amendment to the United States Constitution.

93.     As described above, the conduct of  the Multnomah County John and Jane Doe deputy sheriffs and medical personnel at the jail violated Chasse's Fourteenth Amendment rights because their conduct was unreasonable and/or arbitrary in failing and/or refusing to provide him with treatment for his critical injuries and serious medical needs.

94.     As described above and at least in part, one or more of Multnomah County's and Multnomah County's officials' policies or their well-established official practices were a cause of the deliberate indifference to Chasse's critical injuries and serious medical needs, and of the failure to provide treatment for Chasse's critical injuries and serious medical needs, and of the infliction of punishment, and were a cause of his death, in violation of the Fourteenth

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,      PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

Amendment to the United States Constitution.

95.    As a result of the above, Chasse's estate is entitled to an award of economic and non-economic damages against all of the Multnomah County defendants in amounts to be determined at trial.

96.    As a result of the above, Chasse's estate is entitled to an award of punitive damages against Defendants Multnomah County John Doe deputy sheriffs, medical personnel, and officials, in amounts to be determined at trial.

97.    Pursuant to 42 USC § 1988, Chasse's estate should be awarded its attorney fees and litigation expenses/costs against all of the Multnomah County defendants.

## VIII

## FOURTH CLAIM FOR RELIEF

### (Section 1983 – Fourteenth Amendment Violation –

### Unreasonable Conduct and/or Conduct Which Is So Arbitrary

### That it Shocks the Conscience)

98.    As applicable, plaintiffs incorporate the above.

99.    As described above, Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics, Burton, Multnomah County John and Jane Doe deputy sheriffs and medical personnel, violated the plaintiffs' Fourteenth Amendment rights because their conduct was unreasonable and/or so arbitrary that it shocks the conscience.

100.    As described above and at least in part, one or more of Portland, Multnomah County's, and their officials' policies, well-established official practices, and/or acts caused, or otherwise make them liable for, the violation of plaintiffs' Fourteenth Amendment rights.

PAGE 29 –    COMPLAINT

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

101.    As a result of the above, plaintiffs are entitled to an award of non-economic damages against Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics and officials, Portland, Burton, Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, and Multnomah County, in an amount to be determined at trial.

102.    As a result of the above, plaintiffs are entitled to an award of punitive damages against Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics and officials, and Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, in amounts to be determined at trial.

103.    Pursuant to 42 USC § 1988, plaintiffs should be awarded their attorney fees and litigation expenses/costs against Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics and officials, and Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials.

## IX

## FIFTH CLAIM FOR RELIEF

### (Section 1983 – Fourteenth Amendment Violation –

### Deprivation of Equal Protection Rights)

104.    As applicable, plaintiffs incorporate the above

105.    As described above, Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics, Burton, Multnomah County John and Jane Doe deputy sheriffs and medical personnel, violated the Chasse's Fourteenth Amendment rights because they discriminated against or caused the discrimination against him on the basis that he was mentally

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel: (503)  221-1792

ill, in violation of the Fourteenth Amendment.

106.    As described above and at least in part, one or more of Portland, Multnomah County's, and their officials' policies, and well-established official practices, and/or acts caused, or otherwise make them liable for, the violation of Chasse's Fourteenth Amendment rights.

107.    As a result of the above, Chasse's estate is entitled to an award of economic and non-economic damages against Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics and officials, Portland, Burton, Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, and Multnomah County, in amounts to be determined at trial.

108.    As a result of the above, Chasse's estate is entitled to an award of punitive damages against Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics and officials, and Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials, in amounts to be determined at trial.

109.    Pursuant to 42 USC § 1988, Chasse's estate should be awarded their attorney fees and litigation expenses/costs against Defendants Humphreys, Nice, Portland John and Jane Doe firefighters/paramedics and officials, and Multnomah County John and Jane Doe deputy sheriffs, medical personnel, and officials.

//

//

//

//

//

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

X

## SIXTH CLAIM FOR RELIEF

### (Sections 1985(3) and 1986 – Fourteenth Amendment Violation –

### Deprivation of Equal Protection Rights

### Because of Chasse's Known or Perceived Mental Illness)

110.    As applicable, plaintiffs incorporate the above.

111.    Pursuant to 42 USC §1985(3), plaintiffs allege that Defendants Humphreys, Nice, and Burton acted together and with others to deprive Chasse of his Fourteenth Amendment equal protection rights because of his known or perceived mental illness, which actions were a cause of his injuries, pain, suffering, and tortured death. Additionally, pursuant to 42 USC § 1986, one or more of the defendants neglected or refused to prevent the deprivation of Chasse's rights as described herein.

112.    As a result of the above, Chasse's estate is entitled to an award of economic and non-economic damages against Defendants Humphreys, Nice and Burton, in amounts to be determined at trial.

113.    As a result of the above, Chasse's estate is entitled to an award of punitive damages against Defendants Humphreys, Nice and Burton, in amounts to be determined at trial.

114.    Pursuant to 42 USC § 1988, Chasse's estate should be awarded its attorney fees and litigation expenses/costs against Defendants Humphreys, Nice and Burton, in amounts to be determined at trial.

//

//

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

## XI

## SEVENTH CLAIM FOR RELIEF

### (Discrimination Based Upon Disability)

115.    As applicable, plaintiffs incorporate the above.

116.    Chasse's mental illness was a disability within the meaning of the ADA, the Rehab Act, ORS 659A.142 and Portland City Ordinance 23.01.070.

117.    Defendants knew or should have known that Chasse was disabled for purposes of this claim.

118.    Defendants Portland and Multnomah County failed to evaluate their service policies and practices and the effects thereof that do not comply with federal anti-discrimination statutes pertaining to disability and/or modify their service policies and practices in order to comply with federal anti-discrimination statutes pertaining to disability. This failure violates both the ADA and the Rehab Act.

119.    Defendants Portland and Multnomah County failed to accommodate Chasse's disability in violation of Title II of the ADA and Section 504 of the Rehab Act.

120.    Defendants Portland and Multnomah County failed to provide reasonable modification to accommodate individuals with mental or psychological disabilities in violation of the ADA.

121.    Defendants Portland and Multnomah County discriminated against Chasse based on his disability in violation of the ADA, the Rehab Act, ORS 659A.142 and Portland City Ordinance 23.01.070.

122.    As a result of the above, Chasse's estate is entitled to an award of economic and

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

non-economic damages against Defendants Portland and Multnomah County, in amounts to be determined at trial.

123.    As a result of the above, Chasse's estate is entitled to its attorney fees and litigation expenses/costs against Defendants Portland and Multnomah County on this claim, under all applicable provisions of federal and state law.

## XII

## EIGHTH CLAIM FOR RELIEF

### (Intentional Infliction of Severe Emotional Distress)

124.    As applicable, plaintiffs incorporate the above.

125.    As described above, the employees of Portland and Multnomah County intentionally inflicted severe emotional distress on Chasse while he was still alive.

126.    As a result of the above, Chasse's estate is entitled to an award of economic and non-economic damages against Defendants Portland and Multnomah County in amounts to be determined at trial.

127.    Chasse's estate should be awarded its costs against Defendants Portland and Multnomah County.

## XIII

## NINTH CLAIM FOR RELIEF

### (State Law Claim – Wrongful Death)

128.    As applicable, plaintiffs incorporate the above.

129.    In one or more of the ways described above, Portland, Multnomah County, TriMet, and AMR Northwest were negligent. Those defendants are responsible for their

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 S.W. 2nd Ave. #500
Portland,  Or.  97204
Tel:  (503)  221-1792

negligence, the negligence of their employees, and other tortious conduct which caused the wrongful death of Chasse.

130.    As a result of the above, Chasse's estate is entitled to an award of economic and non-economic damages against Defendants Portland, Multnomah County, TriMet, and AMR Northwest, in amounts to be determined at trial.

131.    Chasse's estate should be awarded its costs against Defendants Portland, Multnomah County, TriMet, and AMR Northwest.

### XIV

### TENTH CLAIM FOR RELIEF

### (Section 1983 – Injunctive Relief)

132.    As applicable, plaintiffs incorporate the above.

133.    Plaintiffs hereby request that Portland and its respective employees and officials take immediate, voluntary steps to adhere to the requirements of the Fourth Amendment to the United States Constitution by effectuating the following:

a.    Portland and its officials shall implement and operate an effective early warning or intervention system to identify and take necessary and appropriate action with respect to Portland police officers with high use of force rates to prevent those officers from engaging in or allowing unlawful and unconstitutional conduct.

b.    Portland and its officials shall implement and operate a thorough, independent, and effective review system to investigate deaths of citizens caused by the police use of physical force and all in-custody deaths.

c.    Portland and its officials shall change and/or supplement any Portland Police

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

Bureau written policy, official practice, or training it gives to its officers, to ensure that those

living with mental illness, and others who are perceived by defendants to be mentally ill, are

treated fairly and with respect and are not discriminated against because they are mentally ill or

are perceived by defendants to be mentally ill.

      d.     Portland and its officials shall change the Portland Police Bureau's current,

written "foot pursuit" policy which allows, encourages, and directs Portland police officers to

take innocent citizens to the ground during foot pursuits, even though the officers do not have

reasonable suspicion or probable cause to believe that someone poses an immediate risk of death

or serious bodily injury to some other person.  The new written policy should prohibit Portland

police officers from taking innocent citizens to the ground during foot pursuits unless the officers

have probable cause to believe that someone poses an immediate risk of death or serious bodily

injury to some other person.

      e.     Portland and its officials shall change the Portland Police Bureau's current,

written policy which does not include as deadly physical force the use of hands and feet to make

or cause impact strikes to the head and other vital areas such as the chest and back.  The new

written policy should prohibit Portland police officers from using their hands and feet to make

impact strikes to a person's head and other vital areas such as the chest, ribs or back unless the

officers have probable cause to believe the person poses an immediate risk of death or serious

bodily injury to some other person.

      f.     Portland and its officials shall change their current, written policy which allows,

encourages, and directs its police officers to use deadly physical force when their police officers

have *only* reasonable suspicion to believe that someone poses an immediate risk of death or

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,  PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

serious bodily injury to some other person. The new written policy should prohibit Portland

police officers from using deadly physical force unless the officers have probable cause to

believe that someone poses an immediate risk of death or serious bodily injury to some other

person.

134.    Depending upon the response to plaintiffs' requests, described in ¶ 133 above, and

other information that is learned during the course of the litigation, plaintiffs will seek injunctive

relief and ask the federal court to order Defendant Portland and its employees and officials to

make the necessary changes to their policies and official practices, to prevent further egregious

violations of the constitutional rights, including the wrongful deaths, of innocent citizens. To the

extent it may be necessary, plaintiffs also will request the federal court to retain continuing

jurisdiction and oversight over the operation of the Portland Police Bureau in the respects

described in ¶ 133 above, to ensure that the changes are implemented in a timely and effective

manner.

135.    If plaintiffs decide to seek injunctive relief, they should be awarded their attorney

fees and litigation expenses/costs against Defendants Portland and Multnomah County pursuant

to 42 USC § 1988.

**WHEREFORE**, plaintiff prays for relief from the Court as follows:

1.    Assume jurisdiction in this matter over plaintiffs' claims;

2.    Award plaintiffs their economic and non-economic damages against defendants in

amounts to be determined at trial in accordance with the allegations and claims set forth above;

3.    Award punitive damages to plaintiffs against Defendants Humphreys, Nice,

Burton, and all John and Jane Does, amounts to be determined at trial in accordance with the

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

allegations and claims set forth above;

    4.     Award plaintiffs their attorney fees and litigation expenses/costs against

defendants in accordance with the allegations and claims set forth above;

    5.     As may be necessary, enter all appropriate injunctive relief which may be sought;

    6.     Grant such other relief as may be just and proper.

PLAINTIFFS DEMAND A JURY TRIAL.

DATED this 5th day of February 2007.

 

TOM STEENSON, OSB #74313
MICHAEL ROSE, OSB #75322
ZAN TEWKSBURY, OSB #91165
BETH CREIGHTON, OSB #97244
503 / 221-1792
Of Attorneys for Plaintiffs

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,  PC
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792