1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                 FOR THE DISTRICT OF OREGON

11  JAMES P. CHASSE, JR., et al., )
                                  )
12                   Plaintiffs,  )
                                  )   No.  CV-07-189-HU
13        v.                      )
                                  )
14  CHRISTOPHER HUMPHREYS, et al.,)   OPINION & ORDER
                                  )
15                   Defendants.  )
    ──────────────────────────────)
16

17  Tom Steenson
    STEENSON, SCHUMANN, TEWKSBURY, CREIGHTON & ROSE, P.C.
18  500 Yamhill Plaza Building
    815 S.W. Second Avenue
19  Portland, Oregon 97204

20        Attorney for Plaintiffs

21  James G. Rice
    DEPUTY CITY ATTORNEY
22  David A. Landrum
    DEPUTY CITY ATTORNEY
23  OFFICE OF CITY ATTORNEY
    1221 S.W. Fourth Avenue, Room 430
24  Portland, Oregon 97204

25        Attorneys for Defendants Humphreys, Nice, City of Portland,
          and Tri-County Metropolitan Transportation District of
26        Oregon

27  / / /

28  / / /


1 - OPINION & ORDER

Agnes Sowle
MULTNOMAH COUNTY ATTORNEY
Susan M. Dunaway
ASSISTANT COUNTY ATTORNEY
501 S.E. Hawthorne Boulevard, Suite 500
Portland, Oregon 97214-3587

    Attorneys for Defendants Multnomah County and Bret Burton

Elizabeth A. Schleuning
Jean Ohman Back
SCHWABE WILLIAMSON & WYATT, P.C.
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Oregon 97204

    Attorneys for Defendant American Medical
    Response Northwest, Inc.

Duane A. Bosworth
Derek D. Green
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201

    Attorneys for Intervenors The Associated Press, Belo Corp
    dba KGW-TV, City of Roses Newspaper Company dba Willamette
    Week, Fisher Communications, Inc. dba KATU-TV, Meredith
    Corporation dba KPTV-Channel 12, Montecito Broadcast Group
    dba KOIN-TV, Oregonian Publishing Company, and Pamplin Media
    Group dba The Portland Tribune

HUBEL, Magistrate Judge:

    Plaintiffs in this case bring civil rights and other claims against the City of Portland, two individual Portland Police Bureau (PPB) officers, unnamed City of Portland firefighters/paramedics, Multnomah County, an individual Multnomah County Sheriff's Deputy, Tri-Met, and American Medical Response (AMR) Northwest, Inc. The action arises out of the death of plaintiff James P. Chasse, Jr. on September 17, 2006, while in-custody of the PPB.

    Presently, eight separate media organizations collectively move to intervene in the action in opposition to a protective order sought by the City defendants. I grant the motion for permissive intervention, decline to resolve the motion for intervention as of

2 - OPINION & ORDER

1  right, and reject the media organizations' arguments in opposition
2  to the protective order.

3  BACKGROUND

4      In July and August of 2007, plaintiff and defendants filed
5  several discovery motions, including separate motions for
6  protective order filed by the City defendants, the County
7  defendants, and AMR Northwest. In an August 22, 2007 Order (dkt
8  #92), I set oral argument on these motions for October 11, 2007.

9      On October 10, 2007, the media organizations filed the motion
10 to intervene in order to oppose the City defendants' motion for
11 protective order. Given the late filing of the motion to
12 intervene, and my reluctance to alter the previously-scheduled
13 argument on the discovery motions, I heard oral argument on the
14 discovery motions, including the motions for protective order, on
15 October 11, 2007, as scheduled.

16     I issued an Opinion & Order on the motions for protective
17 order on October 23, 2007, granting the City's motion in large
18 part. That same day, the City defendants filed a response to the
19 motion to intervene. While the response is docketed after the
20 Opinion & Order, the content of the response indicates that it was
21 drafted, and perhaps filed, before the City defendants had seen the
22 Opinion & Order on the protective order motion. The media
23 organizations filed a reply in support of the motion to intervene,
24 on November 2, 2007, after the October 23, 2007 Opinion & Order.

25 DISCUSSION

26 I.  Intervention

27     The media organizations seek to intervene as of right under
28 Federal Rule of Civil Procedure 24(a), and alternatively,

3 - OPINION & ORDER

permissively under Rule 24(b).   While the City defendants oppose
intervention as of right, they concede that the Ninth Circuit,
presented with the same issue, has approved of permissive
intervention as a method for challenging a protective order.   San
Jose Mercury News, Inc. v. United States Dist. Ct., 187 F.3d 1096,
1100 (9th Cir. 1999) (stating that "[n]onparties seeking access to
a judicial record in a civil case may do so by seeking permissive
intervention under Rule 24(b)(2)").   Given the controlling Ninth
Circuit law and the City defendants' concession, I grant the motion
for permissive intervention and decline to reach the issue of
intervention as of right.

II.   Protective Order

The Protective Order and Amended Protective Order[1], govern the
production of eight categories of documents.   The media
organizations direct their argument in opposition to three of those
categories:  (1)  PPB Internal Affairs Division (IAD) documents;
(2) discipline files of Humphreys and Nice; and (3) the PPB's
After-Action Report and Review Level Findings.   The media
organizations also oppose the imposition of a protective order on
any documents from the City Auditor's Independent Police Review
(IPR) Division.[2]

---

[1]   The Amended Protective Order made no substantive changes
to the initial Protective Order but simply added language
regarding the handling of documents produced under the Protective
Order, at the conclusion of the case.

[2]   As of this writing, the IPR documents are not covered by
the Amended Protective Order.   In the October 23, 2007 Opinion &
Order, I explained that the record before me was inadequate to
determine whether the IPR documents should be subject to the
Protective Order.   I ordered the City defendants to produce those

The media organizations initially argue that because the records at issue are defined as public records under Oregon's Public Records Law, Oregon Revised Statutes §§ (O.R.S.) 192.410-192.505, and are not subject to any exemption, they should not be covered by the Protective Order. Generally, in their briefing, the media organizations discuss the "disclosure is the rule" premise of the Public Records Law, the statutory right of inspection, and the narrow construction of exemptions to public disclosure. Intervenors' Memo. at pp. 5-7. They contend that none of the statutory exemptions permit withholding the documents at issue here, from public disclosure. Id. at pp. 6-10.

These arguments miss the mark as the issue before this Court is not the construction of Oregon's Public Records Law in the context of a public records request. At oral argument, the City defendants took the position, and the media organization intervenors agreed, that this Court has no jurisdiction over a state law public records request. I agree and expressly state that this Court has no such jurisdiction. Moreover, as I stated at the hearing, even if the Court had discretionary jurisdiction, I would decline to exercise it over that issue.

documents in camera, which the City defendants have now done. They are currently under review. I did note, however, in the October 23, 2007 Opinion & Order, that to the extent the IPR files contained personal information regarding Humphreys and Nice, the files would likely be subject to the Protective Order. Oct. 23, 2007 Op. & Ord. at p. 7. I also said that if the IPR's function included investigating complaints in addition to gathering information, the IPR files would likely be subject to the protective order like the IAD files. Nonetheless, presently, the question of whether the IPR documents will be produced subject to the Amended Protective Order is under advisement.

5 - OPINION & ORDER

1    However, as I also made clear at the oral argument, I intend
2    no part of my decision regarding the Protective Order, to have any
3    impact on, or to bind, any decisionmaker appropriately presented
4    with a public records request.  My decision is made solely in the
5    context of the Federal Rules of Civil Procedure, specifically, Rule
6    26(c), and the caselaw interpreting that rule.    While a
7    decisionmaker presented with a public records request regarding the
8    public records at issue in this motion, is welcome to any
9    information or analysis in this Court's record if it is of any
10   assistance, such decisionmaker is not bound by my decision, nor
11   need defer to it in any way.

12       The media organizations next focus on the "good cause"
13   standard under Rule 26(c).  In the October 23, 2007 Opinion &
14   Order, I explained the standards for assessing good cause under
15   Rule 26(c).  Oct. 23, 2007 Op. & Ord. at pp. 2-4.  In particular,
16   I noted that the burden for establishing the need for a protective
17   order under Rule 26(c) falls on the party seeking it, and that the
18   party must articulate specific facts showing that specific
19   prejudice or harm will result if no protective order is granted.
20   Id. at pp. 2-3 (quoting Marbet v. City of Portland, No. CV-02-1448-
21   HA, 2003 WL 23540258, at *1, 3 (D. Or. Sept. 8, 2003), and Fischer
22   v. City of Portland, No. CV-02-1728-BR, 2003 WL 23537981, at *2 (D.
23   Or. Aug. 22, 2003)).

24       I also noted that generally, pretrial discovery, in the
25   absence of a court order, is presumptively public, and that access
26   to such discovery is "'"particularly appropriate when the subject
27   matter of the litigation is of especial public interest[.]"'"  Id.
28   at p. 3 (quoting Marbet, 2003 WL 23540258, at *1 (quoting Welsh v.

6 - OPINION & ORDER

1   <u>City & County of San Francisco</u>, 887 F. Supp. 1293, 1297 (N.D. Cal.
2   1995))).

3       I further noted, however, that despite the public presumption,
4   the Supreme Court has instructed that discovery "'may seriously
5   implicate privacy interests of litigants and third parties," and
6   that discovery rarely takes place in public because pretrial
7   discovery generally is not a "public component[] of a civil
8   trial.'" <u>Id.</u> at p. 4 (quoting <u>Seattle Times Co. v. Rhinehart</u>, 467
9   U.S. 20, 33 & n.19, 34 (1984)).

10      Following the explanation and recitation of the appropriate
11  standards, I concluded that the City defendants had met the good
12  cause standard for protecting eight categories of documents. As to
13  the IAD documents and the personnel/discipline files of Humphreys
14  and Nice, I explained that these documents should be protected
15  because the articulated facts showed that Humphreys and Nice had
16  specific concerns about their personal safety should the documents
17  be publicly released.

18      Humphreys had previously been stalked by an armed individual
19  resulting from his duties as a law enforcement officer and while
20  that incident occurred before the Chasse incident, other
21  threatening activities had been directed to him, and Nice, arising
22  directly from the Chasse incident.

23      I concluded that the City defendants' argument that public
24  distribution of IAD and discipline materials concerning these
25  officers, could impair their safety and that of their families, was
26  not presented as a hypothetical fear. Oct. 23, 2007 Op. & Ord. at
27  p. 6. The articulated specific facts of past actions suggest
28  certain people in the community desire to cause the officers harm.

7 - OPINION & ORDER

1 _Id._; _see_ _also_ _id._ at 8 (applying same argument to discipline
2 information from personnel files).

3        As to the After Action Report and Review Level documents, I
4 agreed with the City defendants that generally, public
5 dissemination of these types of documents would likely have a
6 chilling effect on the free flow of advice and self-critical
7 observations. _Id._ at p. 11. While this argument is, perhaps,
8 nonspecific, I further noted that the fact that the After Action
9 Report was not yet complete and the Review Level process was
10 ongoing, created a concern that public dissemination of the
11 documents I ordered to be immediately produced, could interrupt the
12 continuing investigation, and could impair the remaining discussion
13 and investigation of the incident. _Id._ at p. 12. I also noted
14 that some of the After Action Report and Review Level documents
15 were similar to those produced in response to the IAD document
16 request and for the specific safety concerns discussed in
17 connection with those documents, a protective order was similarly
18 appropriate for the Review Level and After Action Report documents.
19 _Id._

20        The media organizations contend that I erred in concluding
21 that the City defendants established good cause and that I failed
22 to adequately weigh the legitimate public interest in the
23 disclosure of these documents.

24        The media organizations first suggest that the proper good
25 cause inquiry involves a two-step analysis. They rely on a 2002
26 Ninth Circuit case in which the court explained that for good cause
27 to exist under Rule 26(c), the party seeking protection bears the
28 burden of showing specific prejudice or harm will result if no

8 - OPINION & ORDER

1  protective order is granted, and, "[i]f a court finds
2  particularized harm will result from disclosure of information to
3  the public, then it balances the public and private interests to
4  decide whether a protective order is necessary." <u>Phillips ex rel.</u>
5  <u>Estate of Byrd v. General Motors Corp.</u>, 307 F.3d 1206, 1211 (9th
6  Cir. 2002).

7       Notably, the case cited by <u>Phillips</u> in support of this second-
8  step analysis, is a Third Circuit case which does <u>not</u> set out the
9  good cause standard as a two-step inquiry.  In <u>Glenmede Trust Co.</u>
10 <u>v. Thompson</u>, 56 F.3d 476 (3d Cir. 1995), the court cited seven
11 relevant factors, "neither mandatory nor exhaustive," that may be
12 considered in evaluating whether good cause exists.  <u>Id.</u> at 483.
13 After reciting the seven factors, the <u>Glenmede</u> court then explained
14 that "[a]lthough we have recognized that the district court is best
15 situated to determine what factors are relevant to the dispute, we
16 have cautioned that the analysis should always reflect a balancing
17 of private versus public interests-[d]iscretion should be left with
18 the court to evaluate the competing considerations in light of the
19 facts of individual cases." <u>Id.</u>  (internal quotation omitted).
20 The court went on to explain that "[b]y focusing on the particular
21 circumstances in the cases before them, courts are in the best
22 position to prevent both the overly broad use of confidentiality
23 orders and the unnecessary denial of confidentiality for the
24 information that deserves it[.]"  <u>Id.</u> (internal quotation and
25 brackets omitted)

26      The leading"good cause" case in the Ninth Circuit is <u>Foltz v.</u>
27 <u>State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130 (9th Cir.
28 2003).  <u>Foltz</u>, in discussing the standard for establishing good

9 - OPINION & ORDER

cause under Rule 26(c) for unfiled discovery materials, makes no mention of a two-part test, despite quoting <u>Phillips</u> for the proposition that the district court must identify and discuss the factors it considers in a good cause analysis. <u>Id.</u> at 1130-31.

Continued discussion of this issue by the <u>Foltz</u> court emphasized the showing of specific harm or prejudice, or lack thereof, with no mention of a separate inquiry into balancing of public and private interests. Perhaps this is because in <u>Foltz</u>, there was no showing of specific harm and thus, the court did not need to address the second stage of the inquiry, if indeed the inquiry comprises two separate questions.

Nonetheless, at the conclusion of its discussion, the <u>Foltz</u> court noted that, upon remand, the district court had to require State Farm to make an actual showing of good cause for the continuing protection of the documents at issue. <u>Id.</u> at 1131. It cited to <u>Phillips</u> with a parenthetical explanation that the court in <u>Phillips</u> remanded to the district court with instructions to conduct a "good cause" analysis. <u>Id.</u> It cited to <u>Deford v. Schmid Products Co.</u>, 120 F.R.D. 648, 653 (D. Md. 1987), with a parenthetical quote that "[t]he burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm." <u>Id.</u> Again, the court made no mention of a separate, second step of the good cause analysis.

That is not to say, however, that the balancing of the public interest against that of the individual litigant is irrelevant to the good cause determination. It is a relevant factor, just not a

10 - OPINION & ORDER

1  separately articulated second step of the analysis.  As a more
2  recent Ninth Circuit case explained, "[t]he relevant standard for
3  purposes of Rule 26(c) is whether "'"good cause" exists to protect
4  the information from being disclosed to the public by balancing the
5  needs for discovery against the need for confidentiality.'"  <u>Pintos</u>
6  <u>v. Pacific Creditors Ass'n</u>, Nos. 04-17485, 04-17558, 2007 WL
7  2743502, at *5 (9th Cir. Sept. 21, 2007) (quoting <u>Phillips</u>, 307
8  F.3d at 1213).

9       Having considered the media organizations' arguments in
10  opposition to the Protective Order, I remain convinced that the
11  City defendants have established good cause for the Protective
12  Order and therefore, I leave it in place.  The City defendants have
13  articulated, and I have found, that there are safety concerns which
14  are best addressed with a protective order through the discovery
15  phase of this case, and on the terms as outlined in the Protective
16  Order and Amended Protective Order.[3]

17  _____

18  [3] During oral argument, the media organizations suggested
    that Humphreys's affidavit in support of the City defendants'
19  protective order did not establish good cause because it did not
    expressly raise a safety issue as to IAD documents, IPR
20  documents, personnel discipline files, or the After Action Report
    and Review Level documents.  I reject this argument.
21      Reading the affidavit as a whole provides the requisite
22  articulable facts creating a specific fear of harm.  Humphreys
    notes that the posting of his address on a website has caused him
23  concern for the safety of his family, that he has seen posters
    calling him a murderer as a result of the Chasse incident, that
24  he has serious concerns about the unrestricted dissemination of
    personnel and personal information, that dissemination of his
25  records may cause risk to his work as an undercover officer and
    place him in physical jeopardy, and that he has previously been
26  caused severe distress by an armed stalker.  Humphreys Affid. at
27  ¶¶ 4-11.  Given these statements, it was not necessary for
    Humphreys to expressly state that release of IAD files, personnel
28  documents, IPR documents, or the After Action Report and Review

1   While I believe that I adequately noted the public interest in

2   the October 23, 2007 Opinion & Order, I explain again here, more

3   expressly, why I strike the balance in favor of protecting these

4   documents, through the discovery phase.

5   Public dissemination, during the discovery phase of the case,

6   of the documents regarding the past conduct of Humphreys and Nice,

7   before the Chasse incident, could foster a public conversation

8   regarding what should have been done as to PPB training or

9   discipline, which in turn may provoke a discussion about changes to

10  training or discipline policies.  However, when comparing this

11  interest to the safety concerns of the individual officers, and the

12  right to a fair trial guaranteed to all defendants, the defendants'

13  concerns carry more weight.

14  In my opinion, the most appropriate avenue for any change to

15  PPB policy, if any is warranted, is the prosecution of the claims,

16  especially the Monell claims, by plaintiffs in the context of this

17  litigation.  Also notable is the fact that the media organizations

18  may obtain the documents at issue by pursuing a public records

19  request.   Any public interest in knowing the content of these

20  documents, which in turn may be the basis for public discussion of

21  issues regarding monitoring PPB policies and advocating for change,

22  is outweighed by the safety and fair trial concerns of the

23  defendants, by the fact that the intervenors have an alternative

24  avenue to obtain the documents, and by the fact the Protective

25  Order governs the production of documents only through the

26

27

28  Level documents creates a safety issue.  That much is obvious to
    anyone reading his affidavit.

12 - OPINION & ORDER

1  discovery phase of this case.

2       As far as the documents related to the ongoing investigation
3  of the Chasse incident, that is, the After Action Report and Review
4  Level documents, the public interest articulated above is equally
5  applicable to these documents.  It is outweighed, however, by my
6  concerns, discussed in the October 23, 2007 Opinion & Order,
7  regarding public dissemination of documents generated during an
8  investigation which is not yet complete, and by the safety concerns
9  for the individual officers which may be implicated by the contents
10 of some of those documents.  And, as with the other documents, the
11 media organizations may request that the City defendants produce
12 the After Action Report and Review Level documents under the Public
13 Records Law.

14      Finally, while cases relied on by the media organizations,
15 such as Bond v. Utreras, No. 04 C 2617, 2007 WL 2003085 (N.D. Ill.
16 July 2, 2007), Welsh v. City & County of San Francisco, 887 F.
17 Supp. 1293 (N.D. Cal. 1995), and Judge Haggerty's recent opinion in
18 Gwerder v. Besner, No. CV-07-335-HA, Opinion & Order (D. Or. Oct.
19 5, 2007), stress the public character of some of the types of
20 documents at issue here and the public's right to know how
21 allegations of misconduct are being handled and investigated, which
22 in turn gives the public information enabling it to "supervise" and
23 monitor the conduct of police officers, none of these cases appears
24 to discuss facts similar to those presented here, namely, the
25 repeated accusation that the individual officers are murderers,
26 accompanied by "wanted" style posters, coupled with a prior
27 stalking incident as to one officer and the appearance of that
28 officer's address on the internet, and the fact that some of the

13 - OPINION & ORDER

documents are part of an ongoing and incomplete investigation.

When "focusing on the particular circumstances in the case[] before [me]," it is those specific facts that distinguish this case from others which have considered similar types of documents and the propriety of subjecting them to a protective order. For the reasons articulated in my October 23, 2007 Opinion & Order, and in this Opinion & Order, I adhere to my prior conclusion and uphold the Protective Order and the Amended Protective Order entered in this case.

CONCLUSION

I reject the media intervenors' arguments in opposition to the Protective Order and Amended Protective Order.

IT IS SO ORDERED.

Dated this  19th day of November    , 2007.


  /s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

14 - OPINION & ORDER