IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES P. CHASSE, JR., et al., | ) |
| Plaintiffs, | ) ) ) No. CV-07-189-HU |
| v. | ) ) |
| CHRISTOPHER HUMPHREYS, et al., | ) OPINION & ORDER ) |
| Defendants. | ) ) |

Tom Steenson
STEENSON, SCHUMANN, TEWKSBURY, CREIGHTON & ROSE, P.C.
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon 97204

    Attorney for Plaintiffs

James G. Rice
DEPUTY CITY ATTORNEY
David A. Landrum
DEPUTY CITY ATTORNEY
OFFICE OF CITY ATTORNEY
1221 S.W. Fourth Avenue, Room 430
Portland, Oregon 97204

    Attorneys for Defendants Humphreys, Nice, City of Portland, and Tri-County Metropolitan Transportation District of Oregon

/ / /

/ / /

1 - OPINION & ORDER

```
Agnes Sowle
MULTNOMAH COUNTY ATTORNEY
Susan M. Dunaway
ASSISTANT COUNTY ATTORNEY
501 S.E. Hawthorne Boulevard, Suite 500
Portland, Oregon 97214-3587

     Attorneys for Defendants Multnomah County and Bret Burton

Elizabeth A. Schleuning
Jean Ohman Back
SCHWABE WILLIAMSON & WYATT, P.C.
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Oregon 97204

     Attorneys for Defendant American Medical
     Response Northwest, Inc.

Duane A. Bosworth
Derek D. Green
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201

     Attorneys for Intervenors The Associated Press, Belo Corp
     dba KGW-TV, City of Roses Newspaper Company dba Willamette
     Week, Fisher Communications, Inc. dba KATU-TV, Meredith
     Corporation dba KPTV-Channel 12, Montecito Broadcast Group
     dba KOIN-TV, Oregonian Publishing Company, and Pamplin Media
     Group dba The Portland Tribune
```

HUBEL, Magistrate Judge:

Plaintiffs in this case bring civil rights and other claims against the City of Portland, two individual Portland Police Bureau (PPB) officers, unnamed City of Portland firefighters/paramedics, Multnomah County, an individual Multnomah County Sheriff's Deputy, Tri-Met, and American Medical Response (AMR) Northwest, Inc. The action arises out of the death of plaintiff James P. Chasse, Jr. on September 17, 2006, while in custody of the PPB.

Presently, plaintiffs move to compel certain documents from the City defendants [#151]. Plaintiffs separately move for a protective order requiring that parties and witnesses be sequestered during depositions [#161]. I grant in part and deny in

2 - OPINION & ORDER

part the motion to compel. I deny the motion for protective order.

I. Plaintiffs' Second Motion to Compel

After filing the second motion to compel, plaintiffs and the City defendants successfully narrowed the disputed issues to three: (1) the production of Internal Affairs Division (IAD) and Independent Police Review Division (IPR) documents requested in plaintiffs' requests for production #114 and #115, and which concern an ongoing, incomplete investigation; (2) the production of documents related to a shooting death by PPB Lieutenant Jeff Kaer, sought in request for production #116; and (3) the provision of releases signed by defendants Humphreys and Nice to plaintiffs for plaintiffs' use in obtaining certain documents from the Portland Office of the Federal Bureau of Investigation and the United States Attorney's Office in the District of Oregon, sought in requests for production #129 and #130.

A. Documents from Ongoing IAD and IPR Investigations

The City defendants are ordered to produce any factual matter contained in any IAD or IPR files responsive to requests for production #114 and #115, by December 10, 2007, and to promptly and regularly supplement the production of such materials as required under Rule 26(e). Any documents which are in the form of conclusions or resolutions of a complaint, may be produced at the completion of the investigation.

B. Documents Re: the Shooting Death Involving Kaer

Consistent with my October 16, 2007 Order which limited plaintiffs' earlier document requests for officer-involved deaths to non-shooting deaths, I deny this motion.

/ / /

3 - OPINION & ORDER

C. Releases

Plaintiffs' requests for production #129 and #130 seek documents describing, evidencing, or relating to any file created or maintained on or related to Humphreys (#129) or to Nice (#130), by the following agencies: the Federal Bureau of Investigation, the United States Attorney General, the United States Department of Justice, or the Department of Homeland Security, and/or any other federal agency or entity regarding Humphreys (#129) or Nice (#130) and/or his actions and conduct. Alternatively, plaintiffs ask Humphreys and Nice to sign releases enclosed with the requests for production.

The City defendants have provided any documents responsive to these two requests that they possess. They refuse to provide the signed releases. As a result of ongoing discussions between the parties, plaintiffs limit this motion to documents from the Portland Office of the Federal Bureau of Investigation, and the United States Attorney's Office for the District of Oregon.

I deny the motion. As a result of documents previously produced to plaintiffs, plaintiffs believe that these two federal agencies may have documents pertaining to a complaint made against Humphreys. The City has already provided plaintiffs with any IAD or IPR files regarding this particular complaint. The City defendants contend they are under no obligation to provide a release to plaintiffs to aid plaintiffs in their search. They maintain that plaintiffs may serve a subpoena on the particular federal agency to obtain the documents. Plaintiffs' counsel noted that in his experience in other cases, such subpoenas are met with privacy and confidentiality arguments to resist the production of

4 - OPINION & ORDER

the documents, and thus, he seeks the releases to expedite production.

Plaintiffs offer no authority, either in the written materials or at oral argument, to support their position that the Court is empowered to order a party to sign a release such as plaintiffs request here. Plaintiffs rely only on the general provisions of Rule 26. Because the likelihood that either of these two federal agencies possess documents that would lead to the discovery of admissible evidence is so remote given that the previously-produced evidence shows that the United States declined prosecution of the complaint against Humphreys, I decline to exercise my discretion, if the Court has any, to order Humphreys and Nice to provide signed releases to plaintiffs.

II. Sequestration Motion

Plaintiffs move to sequester the three officer defendants (Humphreys, Nice, and Burton), from attending each others' depositions and to prohibit contact among the officer defendants regarding the substance of their respective deposition testimony, until the conclusion of their depositions, and the depositions of all other sequestered witnesses or parties. Plaintiffs further move to sequester Multnomah County corrections nurses Patricia Gayman and Sokunthy Eath, from attending each others' depositions and to prohibit contact between the nurses regarding the substance of their respective deposition testimony, until the conclusion of their depositions, and the depositions of all other sequestered witnesses or parties. Lastly, plaintiffs move to sequester AMR Northwest emergency medical technicians (EMTs) Tamara Hergert and Kevin Stucker, from attending each others' depositions and to

5 - OPINION & ORDER

prohibit contact between the EMTs regarding the substance of their respective deposition testimony, until the conclusion of their depositions, and the depositions of all other sequestered witnesses or parties.

Plaintiffs further seek an order prohibiting the attorneys for any of the defendants, and the agents or employees of any of those attorneys, from informing any sequestered officer defendant or any sequestered witness of the substance of the deposition testimony of any sequestered officer defendant or sequestered witness, until after all of the sequestered officer defendants and other sequestered witnesses have completed their depositions.  Finally, plaintiffs seek an order prohibiting the sequestered officer defendants and sequestered witnesses from obtaining a copy or summary of their own, or any other person's deposition transcript, or any portion thereof, until all depositions of the sequestered officer defendants and the sequestered witnesses have been completed.

As of December 1, 2007, the governing rule is Rule 26(c)(1)(e) which states that "[a] party . . . may move for a protective order . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:  . . . (E) designating the persons who may be present while the discovery is conducted."  Fed. R. Civ. P. 26(c)(1)(E).[1]

---

[1] Before December 1, 2007, the governing rule was Rule 26(c)(5).  Though the wording in Rule 26(c)(1)(E) slightly modifies former Rule 26(c)(5), there is no basis for concluding that any change in meaning was intended or that cases decided under Rule 26(c)(5) would not apply to motions based on Rule

6 - OPINION & ORDER

Plaintiffs contend that the broad language of the rule authorizes the Court, where justice requires, to restrict attendance of witnesses at depositions, and to restrict communications during the deposition process between witnesses. I agree with plaintiffs that the rule empowers the Court to make such orders.

The question, however, is how the Court determines that sequestration is appropriate in any given case. All parties appear to agree that the testimony of witnesses who accurately recall events at issue, is a critical part of the truth seeking process culminating in trial. Plaintiffs suggest that allegations of conspiratorial conduct in a complaint, combined with questions of credibility and the credibility advantage enjoyed by certain witnesses, especially law enforcement witnesses, is sufficient to impose a sequestration order in order to best keep a witness's recollection untainted by any aids and thus, to secure the truth. Defendants suggest that memory is often best kindled in the context of conversation with others, or by having forgotten memories jogged. Thus, defendants argue that sequestering witnesses during discovery can impede the ability of the witness to accurately remember what he or she observed or did.

As defendants note, if allegations of a conspiracy along with credibility issues were enough to warrant sequestration, witnesses in every case with a conspiracy allegation and in every 42 U.S.C. § 1985 conspiracy case, would be sequestered. Indeed, this might implicate such sequestration orders in any case where intent or

---

26(c)(1)(E).

7 - OPINION & ORDER

motivation is an issue, or where police officer testimony is contrasted with civilian testimony. At the other extreme, as plaintiffs note, if an argument that "memories work best interactively or upon prompting" is enough to defeat a witness sequestration request, courts would never grant a sequestration motion.

Because neither of these approaches is tenable, courts have required the presence of exceptional circumstances and specific facts before allowing a motion to sequester witnesses or parties during depositions. E.g., Dade v. Willis, No. Civ. A. 95-6869, 1998 WL 260270, at *1 (E.D. Pa. Apr. 20, 1998) (requiring finding of extraordinary circumstances before excluding a party from proceedings); In re Levine, 101 B.R. 260, 262 (Bankr. D. Col. 1989) (requiring "strong and compelling reasons" to separate witnesses); BCI Commc'n Sys., Inc. v. Bell Atlanticom Sys., Inc., 112 F.R.D. 154, 159-60 (N.D. Ala. 1986) (concluding that the defendant had failed to establish good cause when it presented no compelling or exceptional circumstances and instead presented only "garden variety" or "boilerplate" "good cause facts" which exist in most civil litigation). Moreover, as Dade recognized, the court should examine the circumstances of the parties and issues involved and require a specific showing of good cause. 1998 WL 260270, at *1.

Plaintiffs and defendants in the instant case have cited cases supporting their respective positions. Cases on both sides exist largely because of the individualized nature of the appropriate inquiry. My review of the circumstances and issues involved in the instant case compel me to conclude that the requisite compelling, extraordinary, or exceptional circumstances, are absent here.

8 - OPINION & ORDER

First, none of the cases cited by plaintiffs indicate that the witnesses to be sequestered had previously given statements concerning the events at issue.  Here, plaintiffs already have received statements made by Humphreys and Nice soon after Chasse's death, as well as interview documents of the corrections nurses also generated soon after Chasse's death.  These prior statements should provide a barometer of sorts by which plaintiffs can judge the accuracy of these particular witnesses' testimony during deposition or at trial.

Second, some of the cases cited by plaintiff fail to articulate an appropriate standard for determining good cause and thus, they are unpersuasive.  In Dunlap v. Reading Company, 30 F.R.D. 129, 131 (E.D. Pa. 1962), the court found "good cause" for sequestration under former Rule 30(b), because the ten witnesses subpoenaed for deposition were employed by the one defendant.  In my opinion, simply being employed by the same employer does not demonstrate compelling or exceptional circumstances. Additionally, the witnesses and parties plaintiffs seek to sequester in this case, work for three different employers, and thus, the concern expressed by the Dunlap court regarding the camaraderie of employees working together, is diminished in this case.

In Beacon v. RM Jones Apartment Rentals, 79 F.R.D. 141, 141-42 (N.D. Ohio 1978), the court failed to articulate any standard of good cause to support its conclusion that the witnesses in a housing discrimination case should be sequestered.  Following Beacon would lead to the absurd practice of sequestering witnesses in every discrimination case where requested.

Third, while the Bankruptcy Court of the District of Colorado

9 - OPINION & ORDER

allowed a sequestration motion in In re Levine, the facts suggested that the alleged conspiracy was committed by those with longstanding and close relationships, and that the financial history of the parties was not a garden variety or boilerplate type, but was rather extraordinary. 101 B.R. at 262. In contrast, in the instant case, there is no evidence that the three distinct subgroups of witnesses (officer defendants, corrections nurses, EMTs), have any past, or present, relationship. I acknowledge that within any one of these groups, there may be longstanding and close relationships, but I do not consider that fact alone to be sufficient to establish good cause.

Fourth, in Dade, as defendants note, the court's conclusion there was primarily based on the fact that other than the police officers on the one hand, and the defendant on the other, there were no witnesses to the event. 1998 WL 260270, at *2-3. Here, there were independent citizen witnesses to the events at Northwest 13th Avenue and Everett Street. While there were no witnesses during the time Chasse was traveling in the police car from that location to the precinct, and apparently, no independent non-county witnesses at the jail, the presence of independent witnesses at the time the incident began and during what appears to be the escalation of the police officers' conduct, distinguishes this case from Dade.

Even if Dade were not distinguishable on this account, I would decline to follow its conclusion to the extent the Dade court suggests that the combination of civil rights claims, limited witnesses, police officer partners who are defendants with an interest in the outcome of the case, and credibility a key issue,

10 - OPINION & ORDER

produces extraordinary circumstances justifying a sequestration order. If this were the standard, every 42 U.S.C. § 1983 excessive force case would require sequestration.

Fifth, the sealed filings plaintiffs rely on in support of this motion, do not suggest any inappropriate actions by any attorney, any witnesses, or any investigator. Thus, the sealed filings do not demonstrate extraordinary circumstances justifying sequestration.

Plaintiffs do not require sequestration of witnesses and parties during depositions to test a witness's perception, recollection, and honesty. Rather, they may rely on cross-examination to explore these issues. At deposition, plaintiffs are entitled to ask, in addition to a variety of other questions, who a witness spoke to and when, and, unless privileged, the content of these conversations.

I recognize that some of the cases suggest that the good cause standard for sequestering witnesses may be less rigorous than the standard used for sequestering parties. E.g., Hines v. Wilkinson, 163 F.R.D. 262, 266 (S.D. Ohio 1995) (noting that factors that might justify the exclusion of non-parties from a deposition might not be sufficient to exclude parties). However, on the record before me in this case, I find no basis for excluding either witnesses or parties.

Finally, I note that while sequestration can be appropriate in the right circumstances, it can interfere with an attorney's efforts to effectively represent a client. The "search for truth" includes assisting clients and witnesses in accurately and fully recalling events at issue. This can include accurately letting

11 - OPINION & ORDER

them know what other witnesses recall. There is nothing presumptively sinister about an attorney's efforts assisting a witness in this effort, as long as the attorney makes it clear to the witness that he or she is to tell the truth as they recall it, not as someone else does.

Here, plaintiffs argue that this is not a garden variety case but instead, is one with extraordinary circumstances justifying sequestration of witnesses and parties during deposition, and further justifying an order that counsel not divulge the contents of a deposition to another sequestered party or witness. In support of this position, plaintiffs rely only on the fact that they allege a conspiracy, the fact that some of the subgroups of defendants work together, and the unpersuasive facts in the sealed filings. In my opinion, this does not amount to good cause.[2] I do, however, instruct counsel to instruct their clients and their witnesses to tell the truth as they remember it.

/ / /
/ / /
/ / /
/ / /

---

[2] The City defendants' request, contained in their "Response to Plaintiffs' Counsel's November [20], 2007 Declaration in Support of Plaintiffs' Amended Motion for Protective Order," to strike Plaintiffs' Counsel's November 20, 2007 Declaration in Support of Plaintiffs' Amended Motion for Protective Order, is denied. The City defendants' request, contained in their "Response to '2nd Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Second Motion to Compel Discovery Against City Defendants,'" to strike the Second Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Second Motion to Compel, is denied.

12 - OPINION & ORDER

CONCLUSION

Plaintiffs' second motion to compel (#151) is granted in part and denied in part. Plaintiffs' motion for protective order sequestering witnesses and defendants during depositions (#161) is denied.

IT IS SO ORDERED.

Dated this  5th  day of  December , 2007.

/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

13 - OPINION & ORDER