1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10             FOR THE DISTRICT OF OREGON

11  JAMES P. CHASSE, JR., et al., )
                                  )
12                   Plaintiffs,  )
                                  )    No.  CV-07-189-HU
13       v.                       )
                                  )
14  CHRISTOPHER HUMPHREYS, et al.,)    OPINION & ORDER
                                  )
15                   Defendants.  )
    _____)

16

17  Tom Steenson
    STEENSON, SCHUMANN, TEWKSBURTY, CREIGHTON & ROSE, P.C.
18  500 Yamhill Plaza Building
    815 S.W. Second Avenue
19  Portland, Oregon 97204

20       Attorney for Plaintiffs

21  James G. Rice
    DEPUTY CITY ATTORNEY
22  David A. Landrum
    DEPUTY CITY ATTORNEY
23  OFFICE OF CITY ATTORNEY
    1221 S.W. Fourth Avenue, Room 430
24  Portland, Oregon 97204

25       Attorneys for City Defendants

26  / / /

27  / / /

28  / / /

1 - OPINION & ORDER

1  Agnes Sowle
   COUNTY ATTORNEY
2  Susan M. Dunaway
   ASSISTANT COUNTY ATTORNEY
3  501 S.E. Hawthorne Blvd., Suite 500
   Portland, Oregon 97214-3587
4
   Robert E. Barton
5  COSGRAVE VERGEER KESTER, LLP
   805 S.W. Broadway
6  Portland, Oregon 97205

7       Attorneys for Bret Burton & Multnomah County

8  James P. Martin
   Kari A. Furnanz
9  HOFFMAN HART & WAGNER, LLP
   1000 S.W. Broadway, Twentieth Floor
10 Portland, Oregon 97205

11      Attorneys for Sokunthy Eath & Patricia Gayman

12 James L. Dumas
   Sheri C. Browning
13 LINDSAY, HART, NEIL, & WEIGLER LLP
   1300 S.W. Fifth Avenue, Suite 3400
14 Portland, Oregon 97201

15      Attorneys for AMR Defendants

16 KING, District Judge:

17      In this civil rights action, plaintiffs bring several claims

18 against various groups of defendants, including the City Defendants

19 (Humphreys, Nice, City of Portland, Tri-Met, Potter & Sizer), the

20 County Defendants (Burton & Multnomah County), the County Nurses

21 (Eath & Gayman)[1], and the AMR Defendants (AMR, Stucker, and

22 Hergert).  The claims arise from a September 17, 2006 incident in

23 which James P. Chasse, Jr. (Chasse), died in police custody.

24      All of the parties have moved for summary judgment as to

25 certain claims.  As a result of previous orders, there are only

26

27
        [1]  The County Defendants and the County Nurses were
28 dismissed from the case on August 17, 2009.

2 - OPINION & ORDER

certain parts of some motions presently requiring resolution. Those are:   (1) the motion by Humphreys and Nice against plaintiffs' Equal Protection claim; (2) the motion by plaintiffs against the AMR Defendants' affirmative defenses; and (3) the motion by Hergert and Stucker as to some of plaintiffs' claims. This Opinion & Order addresses only the motion by Humphreys and Nice as to the Equal Protection claim.   The cross-motions between plaintiffs and the AMR Defendants will be addressed separately, at a later date.

STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'"   Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)).   The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.   Celotex, 477 U.S. at 322-23.

3 - OPINION & ORDER

1     The substantive law governing a claim determines whether a
2  fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors
3  Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as
4  to the existence of a genuine issue of fact must be resolved
5  against the moving party.  Matsushita Elec. Indus. Co. v. Zenith
6  Radio, 475 U.S. 574, 587 (1986).  The court should view inferences
7  drawn from the facts in the light most favorable to the nonmoving
8  party.  T.W. Elec. Serv., 809 F.2d at 630-31.

9     If the factual context makes the nonmoving party's claim as to
10  the existence of a material issue of fact implausible, that party
11  must come forward with more persuasive evidence to support his
12  claim than would otherwise be necessary.  Id.; In re Agricultural
13  Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);
14  California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,
15  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

16                          DISCUSSION

17     In their Fifth Claim for Relief, plaintiffs allege that
18  Humphreys and Nice violated Chasse's Fourteenth Amendment rights
19  because they discriminated against him, or caused the
20  discrimination against him, on the basis that he was mentally ill
21  or perceived to be mentally ill.  Am. Compl. at ¶ 106.

22     The Equal Protection Clause provides that no state shall "deny
23  to any person within its jurisdiction the equal protection of the
24  laws."  U.S. Const. amend XIV, § 1.  As the Supreme Court has
25  noted, this "is essentially a direction that all persons similarly
26  situated should be treated alike."  City of Cleburne, Tex. v.
27  Cleburne Living Center, 473 U.S. 432, 439 (1985); see also
28  Merrifield v. Lockyer, 547 F.3d 978, 992 (9th Cir. 2008) (Equal

4 - OPINION & ORDER

Protection Clause requires that similarly situated persons be treated equally).

Because the Equal Protection Clause protects against classification-based discrimination, the issue in many equal protection claims is whether a governmental policy or practice contains inappropriate classifications. See Clark v. Jeter, 486 U.S. 456, 461 (1988) (in equal protection clause analysis, courts look at different types of government classification and apply different levels of scrutiny in evaluating constitutionality of such classifications); see also Martin v. California Dep't of Veterans Affairs, 560 F.3d 1042, 1049 (9th Cir. 2009) ("'A governmental policy that purposefully treats the disabled differently from the non-disabled need only be rationally related to legitimate legislative goals to pass constitutional muster.'") (quoting Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001)).

In the claim at issue in this motion, however, the allegation against Humphreys and Nice does not involve a government policy classification. Plaintiffs do not contend, as to these individual defendants, that they acted pursuant to an unconstitutional policy or practice. Rather, the claim is that Humphreys and Nice engaged in certain conduct directed at Chasse (for example, choosing to stop him, chasing him, tackling him, failing to send him to the hospital in an ambulance from NW Everett and NW 13th, failing to obtain prompt medical attention for him at the jail, and then driving Chasse to Portland Adventist instead of a closer hospital), because of his mental illness.

While not labeled as such by the parties, I view this as a

5 - OPINION & ORDER

1  selective enforcement claim.  That is, Humphreys and Nice allegedly
2  chose to question Chasse and then engage in the other conduct
3  described above, because he was mentally ill and would not have
4  done so but for his mental illness.  This is no different from the
5  selective enforcement or prosecution claims which allege that the
6  police stopped someone because of his or her race.

7      To prevail on this equal protection claim against the
8  individual City police officers, plaintiffs must show that
9  Humphreys's and Nice's conduct had a discriminatory effect and that
10 they possessed a discriminatory motive.  Rosenbaum v. City & County
11 of San Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007); see also
12 Wayte v. United States, 470 U.S. 598, 608 (1985) (standards for
13 selective prosecution claims require a showing of both a
14 discriminatory effect and motivation by a discriminatory purpose);
15 Farm Labor Organizing Comm. v. Ohio State Highway Patrol, 308 F.3d
16 523, 534 (6th Cir. 2002) (noting that "a claimant alleging
17 selective enforcement of facially neutral criminal laws must
18 demonstrate that the challenged law enforcement practice 'had a
19 discriminatory effect and that it was motivated by a discriminatory
20 purpose[;]' further noting that this analytical framework has been
21 applied in the Sixth and other circuits in cases involving
22 allegations of discriminatory police enforcement practices)
23 (quoting Wayte, 470 U.S. at 608).

24     To establish discriminatory effect, plaintiffs must show that
25 similarly situated individuals were treated differently.  United
26 States v. Armstrong, 517 U.S. 456, 465 (1996).  In the context of
27 the instant claim, plaintiffs must show that similarly situated
28 individuals who were not mentally ill, were not subject to the

6 - OPINION & ORDER

offensive conduct.  As discussed below, plaintiffs here fail to make that showing, or to create a genuine issue of fact precluding summary judgment, on the discriminatory effect prong of the analysis.

In the City Defendants' memorandum in support of the motion, the City Defendants raise several arguments, including that "plaintiffs have failed to establish an essential element of a prima facie equal protection discrimination case:  That Chasse was treated differently than similarly situated citizens who were not living with mental illness." City Defts' Mem. at p. 11.  The City Defendants further argue that there is no evidence that Humphreys and Nice intended to treat Chasse differently than others similarly situated based on his mental illness because Humphreys and Nice had not seen Chasse before September 17, 2006, and did not know that he was mentally ill.

In response, plaintiffs put forth evidence and argument on the knowledge and intent issue.  They fail to address the discriminatory effect element.

Nonetheless, in liberally reading plaintiffs' opposition memorandum, I have found three assertions that could possibly suggest an issue of fact about Humphreys's and Nice's, or the Portland Police Bureau's, treatment of others.  The record, however, is insufficient to preclude summary judgment.

First, at page fifteen, footnote ten of their memorandum, plaintiffs assert that when Humphreys first spotted Chasse at Northwest 18th Avenue, "Nice was attending to a stumbling, falling down, apparently not mentally ill drunk, who he allowed to walk home rather than arrest for being drunk in public or taking him to

7 - OPINION & ORDER

1    a detox center, as Nice could have."  Pltfs' Mem. at p. 15 n.10.

2         In support of this assertion, plaintiffs cite to their Concise

3    Statement of Facts (CSF) at ¶¶ 6 and 10.[2]  Paragraph 6 asserts that

4    "At 5:09 p.m. . . ., Humphreys and Burton parked at NW 18th &

5    Everett to assist Nice with an intoxicated person who had stumbled

6    and fallen."  Pltfs' CSF at ¶ 6 (dkt #709).  In support of this

7    statement, plaintiffs cite to "Id., pp. 3-4, PE 7, p 3."  Id.

8         Because I interpret a cite to "Id." as a cite to the

9    immediately preceding cited material, I understand the "Id." at the

10   end of paragraph 6 to refer to the previously cited exhibit.  In

11   this instance, there are five exhibits cited at the end of

12   plaintiffs' asserted fact in paragraph five.  This creates an

13   unnecessary burden on the Court.  I have no idea which of these

14   five exhibits plaintiffs rely on for the asserted fact in paragraph

15   six.  Thus, I have looked at all five of the exhibits, which are

16   Plaintiffs' Exhibits 6, 9, 6 (under seal), 49 (under seal), and 50

17   (under seal).  Notably, none of the them contain pages 3-4, and

18   none of them support the asserted fact.

19        Plaintiffs also cite to Plaintiffs' Exhibit 7.  There is no

20

21        [2]  Plaintiffs originally submitted two separate fact
22   statements, one filed under seal (dkt #715), and the other filed
     for public access (dkt #709).  The two filings created
23   unnecessary confusion for the Court.  As a result, I asked
     plaintiffs to merge or "blend" the two documents into one, and to
24   submit a judge's copy to the Court, and provide one to opposing
     counsel.  Unfortunately, the timing of this request and the
25   delivery to opposing counsel was too late for opposing counsel to
     be assisted by it.  Thus, I have relied on the fact statements as
26   originally filed.  In the future, I request that plaintiffs
     simply file one document and if it contains material which should
27   be filed under seal, the entire document should be filed under
28   seal.

8 - OPINION & ORDER

Plaintiffs' Exhibit 7 in this summary judgment record.  See
Steenson Declr. in Opp. to Motion for SJ (dkt #710) at page 2
(stating that Plaintiffs' Exhibit 7 is "Not Submitted.").  The
citations for the asserted fact in plaintiffs' paragraph six do not
support the assertion.  Moreover, the asserted fact states only
that Nice was with an intoxicated person who had stumbled and
fallen.  This alone does not supply an adequate comparator.  The
asserted fact does not indicate that the intoxicated person was not
mentally ill.  Thus, even if there were evidence in this summary
judgment record to support the asserted fact, the asserted fact is
insufficient evidence of Humphreys's and Nice's different treatment
of a similarly situated person.

        The other citation in plaintiffs' memorandum in support of
their assertion that Nice treated the intoxicated person
differently, is to plaintiffs' paragraph ten.  There, plaintiffs
assert, in relevant part, that "[a]fter Nice let the intoxicated
person walk home, . . . ."  Pltfs' CSF at ¶ 10 (dkt #709).  In
support of this assertion, plaintiffs cite to Plaintiffs' Exhibit
4, at pages 4 and 8.  Id.

        Plaintiffs' Exhibit 4 is an excerpt of a transcript of a
statement Humphreys made a few days after the Chasse incident.  It
is not paginated.  On what I count as pages four and eight, there
is no testimony by Humphreys about Nice having let an intoxicated
person walk home.  On the transcript's internally labeled page
four, there is some testimony about the intoxicated person, but it
is crossed out.  It is still legible, however, and states that Nice
was contacting a visibly intoxicated subject, that the intoxicated
subject Nice was contacting was seated on the stairs, and Nice was

9 - OPINION & ORDER

talking to him.  Pltfs' Exh. 4.  There is nothing more about the person on the page.  On the transcript's internally labeled page eight, no statements about the intoxicated person appear.  As with the other citations in support of plaintiffs' assertion that the individual officers treated a similarly situated non-mentally ill person differently, the citation to Plaintiffs' Exhibit 4 does not support the assertion.  Plaintiffs fail to create an issue of fact on the "discriminatory effect" prong of the analysis with the assertion based on allegedly different treatment of an intoxicated, allegedly non-mentally ill subject.

The next possible statement by plaintiffs that could suggest different treatment of similarly situated non-mentally ill persons, is plaintiffs' argument that Humphreys's use of a "spit sock" on Chasse could be viewed by the jury as evidence of discriminatory intent "given that there is no evidence of spit socks being used by the [Portland Police Bureau] PPB under any other circumstances."  Pltfs' Mem. at p. 18.

Although plaintiffs make this argument in support of the discriminatory motive prong of the selective enforcement analysis, I have considered it as to the discriminatory effect prong as well.  However, plaintiffs cite to no evidence in the record supporting this statement and I have found no facts in either of plaintiffs' fact statements (dkt #s 709, 715) mentioning the PPB's use, or non-use, of spit socks.  Thus, this assertion is completely unsupported.

The third possible statement by plaintiffs that could support their burden on the discriminatory effect issue, is the assertion, again made by plaintiffs on the discriminatory intent part of the

10 - OPINION & ORDER

analysis, that Nice instructed the attending paramedic at NW 13th and Everett, to get Humphreys to sign a "transport refusal form" provided by the paramedics, and that this "was the first and only know[n] occasion on which such a form has been signed by an officer." Pltfs' Mem. at p. 19. In support, plaintiffs cite to "Id.", and "Id., ¶ 38." Id. I assume the "Id." citation refers to plaintiffs' fact statement, the previous non-Id. cite at the conclusion of the preceding paragraph. Plaintiffs' fact statement, at paragraph thirty-eight, asserts that "[n]o PPB officer has signed or been asked to sign an 'Info Form' like Humphreys did." Pltfs' CSF at ¶ 38 (dkt #709). In support, plaintiffs cite to Plaintiffs' Exhibit 59, at pages 56-57.

Plaintiffs' Exhibit 59 is an excerpt from the deposition testimony of Jose E. Gonzalez. Aside from the discrepancy between the assertion in the memorandum of the form in question being a "transport refusal form," and the form noted in the fact statement as being an "Info Form," the testimony does not support the assertion.

Steenson identifies the exhibit as being the excerpts of deposition testimony of PPB Sergeant Jose Gonzalez. Steenson Declr. at p. 5 (Dkt #710). The deposition excerpt itself includes no identifying information about Gonzalez and no information about his duties. The cited excerpt includes a statement by Gonzalez that he received a "Contact report" from Humphreys. Gonzalez does not refer to it as an "Info Form," or a "transport refusal form." He states that he received from Humphreys an emergency medical service information form in the name of John Doe that was signed with an unknown signature. Pltfs' Exh. 59 at p. 56. Gonzalez gave

11 - OPINION & ORDER

the form to the detective. _Id._ He testified that he had never seen a form like that before, that he had never signed a form like that before, and that he had not seen an officer sign a form like that before. _Id._ at pp. 56-57. He also testified that he had not heard of emergency medical personnel asking or giving such a form to an officer to sign. _Id._ at p. 57.

While this testimony establishes that the alleged use of the form (whichever form it actually is) in this manner is unfamiliar to Gonzalez, this testimony does not support plaintiffs' assertion that no PPB officer has signed or been asked to sign an "Info Form" like Humphreys did. Plaintiffs' assertion simply goes too far.

In summary, on the discriminatory effect part of the selective enforcement equal protection analysis, plaintiffs fail to create a question of fact on the issue of whether Humphreys and Nice treated similarly situated, non-mentally ill, individuals differently. Plaintiffs' memorandum omits any argument on the issue and while I have attempted to glean some possible assertions in plaintiffs' memorandum that might be relevant to this issue, the factual record fails to support the assertions.

Because of my conclusion on discriminatory effect, I need not address the discriminatory intent prong of the analysis. Even if plaintiffs created an issue of fact regarding what Humphreys or Nice knew of or learned regarding Chasse's mental illness on September 17, 2006, and even if that knowledge and other evidence in the record created a question of fact on the issue of Humphreys's or Nice's discriminatory intent or motive, Humphreys and Nice are entitled to summary judgment on the equal protection claim based on plaintiffs' failure to create an issue of fact

12 - OPINION & ORDER

1    regarding discriminatory effect.

2                              CONCLUSION

3         I grant Humphreys's and Nice's summary judgment motion (#640)

4    on plaintiffs' equal protection claim.

5         IT IS SO ORDERED.

6                    Dated this ____1st___ day of _September_, 2009.

7

8

9                                        /s/ Garr M. King
                                        _____
10   _____ Garr M. King
                                        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13 - OPINION & ORDER